Harold L. OSBORNE, Plaintiff,

v.

Max CLELAND, Defendant.

No. LR–C–75–3.

United States District Court,
E. D. Arkansas, W. D.

April 25, 1979.

Perlesta A. Hollingsworth, Little Rock, Ark., for plaintiff.

Doug Chavis, Asst. U. S. Atty., Little Rock, Ark., for defendant.

## OPINION

ARNOLD, District Judge.

This is a Title VII racial-discrimination case brought by Harold L. Osborne against Max Cleland, the Administrator of plaintiff's former employer, the Veterans Administration. Mr. Osborne was employed by the V. A. Hospital at Fort Roots in North Little Rock, Arkansas, as a nursing assistant. He was first employed in 1963. His duties were to help and supervise psychiatric patients. He resigned in 1967. On May 29, 1973, Mr. Osborne was re-employed. He was discharged on April 5, 1974.

█ The order and nature of proof in a case of this kind were laid down by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the standards set out in that opinion, Mr. Osborne has made a prima facie case of discrimination. That is, he is black, he was holding and was qualified for a job with the employer, he was discharged, and after his discharge, the position remained open, and the employer continued to seek applicants from persons of plaintiff's qualifications. Plaintiff had performed his job satisfactorily, so far as

his personnel file shows, for four years in the 1960's and for almost one year in the 1970's. No complaint was ever made about his job performance, so there is no doubt that he was "qualified" for the job in the sense of being able to perform it.

The burden of proof is thus shifted to the defendant to articulate some legitimate, nondiscriminatory reason for the plaintiff's discharge. Plaintiff was discharged because he falsified a document styled "Declaration of Appointee" before he was re-hired in 1973. Question 9 on this document inquired whether plaintiff had been convicted of, or had forfeited collateral for, any offense since the filing of his application for re-employment. This application was dated December 15, 1971. In fact, plaintiff had forfeited collateral for the offense of procuring some time between December 15, 1971, and May 29, 1973. He concealed this fact on his Declaration of Appointee and answered Question 9 in the negative.

Discharge for this kind of falsification is legitimate. Mrs. Shirley Walters, a nursing supervisory employee at Fort Roots, testified that the practice of procuring could precipitate psychoses or even suicide on the part of a patient. According to Mrs. Walters, the V. A. would not have hired Mr. Osborne in the first place had it known of the incident of procuring. In addition, Mrs. Marjorie Poole, currently chief of the nursing service at Fort Roots, testified that she would be quite concerned about the presence of a convicted procurer in the position of a psychiatric nurse assistant. Leading one of the patients to buy sex would be contrary to the program of treatment, she said. Nursing assistants have keys to the buildings and to all of the wards, and it would be possible, especially late in the day, for a prostitute to be brought into the building to see one of the patients.

Ernie Frint, an assistant personnel officer at the Hospital, took part in the decision to terminate Mr. Osborne. According to Mr. Frint, several factors were weighed: the seriousness of the conviction, when it occurred, its relationship to job performance, and Mr. Osborne's record as an employee.

After a review of all these factors, the chief nurse at the time, Charles Sevak, decided to propose that Mr. Osborne be removed. Mr. Frint reviewed and approved the notice of proposed removal, and it was eventually approved and put into effect by Homer T. Ford, Director of the Hospital at the time. Mr. Frint was of the opinion that the offense involved had a direct bearing on Mr. Osborne's suitability for the job.

In addition, there is in the record an exhibit listing those persons, other than plaintiff, who have falsified their employment records at Fort Roots since 1969. Fourteen such persons are listed, six black and eight white. None of these persons was terminated. One of the black persons on the list, a nursing assistant, GS-4, had been convicted of burglary, theft, criminal trespass, and two instances of shoplifting. He had concealed these convictions on an employment form of some sort, and this concealment had been discovered, but he was nevertheless kept on the job. Another person on the list, also black, had been convicted of assault with a deadly weapon. He was a psychiatric nursing assistant, Grade GS-2, like Mr. Osborne. He was not terminated. Indeed, he was not disciplined in any way, and neither was any other employee listed. Thus, Mr. Osborne was apparently the only person terminated for falsification of records during the relevant period. Mr. Frint testified that perhaps one, two, or three other persons might have been so terminated, but this testimony was based on his personal recollection only, and not on a search of records, and the parties agreed in open court at the conclusion of the trial that the Court could decide this case based solely on the exhibit referred to.

█ It is apparent, therefore, that defendant has borne its burden of showing that plaintiff was discharged for a legitimate and nondiscriminatory reason. Under *McDonnell Douglas*, however, that is not the end of the analysis. The Court must next inquire whether the reason given was pretextual only, that is, whether concealment of the offense of procuring was only an excuse, cloaking what was in fact racial

animus on the part of defendant. The Court is not persuaded that there was any such animus, or that plaintiff was discharged for any reason other than that given. Statistical evidence introduced by the plaintiff indicates that blacks are employed by the V. A. in Pulaski County, Arkansas, in numbers exceeding their proportion of the general population. There is no statistical showing, in other words, that the V. A. discriminates in hiring as a general matter. There is no evidence in the record of any sort with respect to discharges, other than that previously referred to in this opinion.

Plaintiff's statistical proof does show that the presence of blacks in higher-grade, supervisory jobs with the V. A. is a great deal less than that indicated by their presence in the general population, and an inference might be made that the V. A. does discriminate with respect to hiring for higher-paying jobs, or promotion to those jobs. Such a statistical inference, however, even if it were made, would not avail the plaintiff here. He has never applied for a supervisory position and does not contend that he should have had one. The only testimony on his part with respect to promotion had to do with his claim that he should have been promoted from GS–2 to GS–3 during his second tour of duty at the V. A. It is clear that the failure of the V. A. to make such a promotion was due only to the fact that plaintiff had not yet served with it for a year. He had previously, during his first tour of duty, been promoted to GS–3. Mr. Frint, the only person who took part in the actual employment action involved here and was present at the trial, testified that race was no part of his motive, and this Court believes him.

Plaintiff argues persuasively that his involvement with procuring was isolated and insignificant. He was a bell hop at a hotel in Little Rock, one of the guests asked him for "companionship," he called a telephone number, and in response to his call a woman appeared at the hotel and went to the guest's room. The guest turned out to be a policeman, and plaintiff was arrested, posted bond in the amount of $54.50, and later forfeited the collateral. The action of the V. A. in discharging him for concealing this incident may seem harsh. It may also be inconsistent with other personnel actions reflected in this record. The Court, however, is without power in this action to review the merits of the employment action taken by defendant. The question before the Court is only whether the discharge of plaintiff violated Title VII of the Civil Rights Act of 1964, and the Court holds that it did not.

Judgment will be entered in accordance with this opinion.