508 F.Supp. 363 (1981)
Mary LINDSEY, Plaintiff,
v.
ANGELICA CORPORATION et al., Defendants.
No. 78-624C(2).
United States District Court, E. D. Missouri, E. D.
March 6, 1981.
*364 Louis Gilden and M. Ellen Simmons, Norton Y. Beilenson, St. Louis, Mo., for plaintiff.
W. Munro Roberts, Jr., Roberts, Heneghan & Coffelt, Inc., St. Louis, Mo., for defendants.

MEMORANDUM
NANGLE, District Judge.
Plaintiff brought this suit alleging that defendants refused to hire her on account of her race in violation of 42 U.S.C. §§ 1981 and 2000e-2(a). She seeks equitable and monetary relief, as well as attorneys' fees and costs.
This case was tried before the Court sitting without a jury. This Court having considered the pleadings, the testimony of the witnesses, the documents in evidence, and the stipulations of the parties, and being fully advised in the premises, hereby makes the following Findings of Fact and Conclusions of Law, as required by Rule 52, Federal Rules of Civil Procedure.

FINDINGS OF FACT
1. Plaintiff is a black female resident of the City of St. Louis, Missouri.
2. Defendant Angelica Corporation[1] is engaged in a variety of businesses. One such business is the retail merchandising of uniforms. This business is conducted by defendant through Life Uniform Shops, a division of Angelica Corporation. Defendant is an employer within the meaning of 42 U.S.C. § 2000e (b), in that it is engaged in an industry affecting commerce and employs at least fifteen persons.
3. On or about March 16, 1975, the Life Uniform Shop owned and operated by defendant on North Grand Avenue in the City of St. Louis, advertised in the St. Louis Post-Dispatch, a newspaper of general circulation in the St. Louis metropolitan area, that an opening existed for an assistant manager. The ad informed interested applicants to phone Joan Arnick, defendant's manager at the Grand Avenue store.
4. Ms. Arnick was responsible for hiring and firing at the Grand Avenue store. The different locations of defendant's Life Uniform Shops in the St. Louis area were operated somewhat autonomously, with the store manager at each location responsible for the hiring and firing of subordinates. Ms. Arnick had placed the ad in question.
5. Plaintiff contacted Ms. Arnick on or about March 17, 1975 and was told to come to the store to fill out an application. Plaintiff did so that day and was interviewed at that time by Ms. Arnick. Plaintiff was accompanied at this time by a friend who verifies, to the extent possible, her version of the events in question. After talking briefly with plaintiff, Ms. Arnick informed her that she appeared qualified for the position. Ms. Arnick stated that she had to interview a few more applicants that day, and that she would call plaintiff that evening to let her know if she got the position. It was normal company policy to so notify job applicants.
6. Plaintiff was never contacted by defendant that evening. When plaintiff subsequently called the store to inquire about her application, she was informed that the position had been filled.
*365 7. The following Sunday, however, the advertisement seeking an assistant manager again appeared in the St. Louis Post-Dispatch. Plaintiff saw this advertisement and again called the store in response to the ad. Plaintiff initially gave a false name. She was concerned that if she gave her real name, she would again be told that the position was filled. Plaintiff, while proceeding under the false name, was told that the position was open and that she should come to the store and fill out an application.
8. Plaintiff then went to defendant's store. She reminded Ms. Arnick, with whom she again talked, that she had filled out an application for the previous week. Ms. Arnick replied that the previous application had been lost, and requested plaintiff to fill out another. Plaintiff did so and was again told that she appeared qualified. Ms. Arnick thereupon told plaintiff that she would be contacted shortly to let her know about her application. Ms. Arnick said she had to check out the application with her superiors.
9. Once again, defendant never got back to plaintiff. Plaintiff subsequently called defendant and was informed that the job had been filled.
10. On or about March 25, 1975 defendant hired Janean Shaffer to serve as assistant manager of the Grand Avenue store. A comparison of her prior work history with that of plaintiff, as revealed on their respective applications, showed that Shaffer had exhibited a greater degree of stability in her prior employment. Shaffer had also previously handled positions of greater responsibility than had plaintiff.
11. Plaintiff was undoubtedly qualified for the position which she sought, however. That position involved primarily sales work under the supervision of the store manager. The assistant manager was in charge of the operations of the store only at those times when the manager was absent. Plaintiff had previous experience with such work.
12. Ms. Arnick did not check into plaintiff's qualifications until after the discrimination charges were filed by plaintiff with the Equal Employment Opportunity Commission ("E.E.O.C.") and the St. Louis Council on Human Rights ("S.L.C.H.R."). Ms. Arnick's court testimony otherwise was contrary to her prior deposition testimony and is not credited by this Court.
13. Only approximately sixty employees were hired at all the Life Uniform Shops in the St. Louis area during the past nine years. As with Ms. Arnick's hires at the Grand Avenue shop, blacks were well-represented in the part-time sales positions, which accounted for the great majority of the new hires, but were under-represented, in relation to their proportion of the metropolitan population, in the full-time positions. Very few full-time employees were hired during this period.
14. Had plaintiff been hired by defendant as an assistant manager when she initially applied, and had she continued to work in that position until present, she would have earned approximately thirty-six thousand dollars ($36,000.00) during that time. Working in various other positions during that time, plaintiff earned approximately twenty thousand dollars ($20,000.00).
15. Plaintiff filed a charge of discrimination with the E.E.O.C. on April 2, 1975, and brought this suit within ninety days of receipt of her Right to Sue letter from the E.E.O.C. The E.E.O.C. and the S.L.C.H.R. jointly investigated plaintiff's charges.
16. Defendant cooperated at all times with the investigation conducted by the S.L.C.H.R. This Court can find no willful misstatements of fact or attempts to obstruct proceedings on defendant's part.

CONCLUSIONS OF LAW
This Court has jurisdiction of this case pursuant to 28 U.S.C. § 1343 and 42 U.S.C. § 2000e-5(f)(3).
Under Title VII,[2] plaintiff has the *366 initial burden of proving a prima facie case. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Once plaintiff satisfies this burden, the defendant must then articulate a legitimate, non-discriminatory reason for its action in order to rebut the inference of discrimination which arises upon plaintiff's proof of a prima facie case. Id.; Furnco Construction Corp. v. Waters, 438 U.S. 567, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978). Plaintiff must then prove that the articulated reason is merely a pretext for illicit discrimination. Furnco, supra. The burden remains on plaintiff throughout  she must convince the trier of fact that the challenged employment practice was discriminatory. Kirby v. Colony Furniture Company, Inc., 613 F.2d 696 (8th Cir. 1980).
To make out a prima facie case of discrimination herein, plaintiff must show that she belongs to a racial minority; that she applied and was qualified for a position for which defendant was seeking applicants; that, despite her qualifications, she was rejected; and that, after her rejection, the position remained open and defendant continued to seek applicants. McDonnell Douglas, supra 411 U.S. at 802, 93 S.Ct. at 1824. These elements were clearly shown in this case. Defendant does not dispute three of these elements. As to the fourth, this Court has found that plaintiff was qualified for the job in question. Though she had not previously held an identical position, she was previously employed in the retail field. The assistant manager position required no special skills or abilities, and this Court is convinced plaintiff is capable of handling its duties and responsibilities.
Defendant has articulated a legitimate, non-discriminatory reason for the rejection of plaintiff  the person eventually hired, Janean Shaffer, was better qualified for the position than plaintiff. Though the differences in qualifications are not great, this Court will accept that justification as the articulation of a legitimate non-discriminatory reason for defendant's actions. Board of Trustees v. Sweeney, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978). Nevertheless, in the final analysis, this Court is convinced that the proferred justification is merely a pretext for illicit discrimination.
Weighing heavily on this determination is the fact that defendant never dealt squarely with plaintiff from the beginning. When plaintiff was rejected, both initially and after her second application, she was not notified of defendant's decision, contrary to the customary policy of Life Uniforms and, as defendant's Vice-President of Industrial Relations admitted, contrary to common courtesy. When plaintiff called defendant to inquire as to the status of her application on or about March 18, 1975, she was informed that the job was filled, which it was not. When Ms. Arnick talked to plaintiff in connection with her second application, Ms. Arnick said she would check out the application with her superiors when, in fact, the hiring decision was solely up to Ms. Arnick. Finally, when plaintiff reminded Ms. Arnick that she had previously completed an application, she was told that the previous application had been lost, which this Court views as unlikely.
Factors which this Court does not view as significant in this vein are the statistics proffered by both sides and the defendant's anti-discrimination policy. As was shown by the parties herein, the statistics can be read as favorable to whichever party one wishes. In any event, the statistics are incomplete with respect to the racial composition of the job applicant pool and the population is too small from which to draw significant conclusions. Harper v. Trans World Airlines, Inc., 525 F.2d 409 (8th Cir. 1975); Eubanks v. Pickens-Bond Construction Co., 635 F.2d 1341 (8th Cir. 1980). Defendant's articulated general company policy of non-discrimination is not of great weight in this case, as the evidence shows that this individual plaintiff was, in fact, discriminated against.
Plaintiff is therefore entitled to back pay, attorneys' fees, and equitable relief. Back pay amounts to sixteen thousand *367 dollars ($16,000.00), the amount she would have earned working for defendant less the amount she actually earned elsewhere. The issue of attorneys' fees was severed from the trial on the merits. A hearing will be held shortly on that matter. As far as equitable relief is concerned, plaintiff is entitled to the position she would have had absent defendant's illicit discrimination, assistant manager at the Grand Avenue Life Uniform Shop. Defendant will be ordered to offer that position forthwith.
Plaintiff also seeks punitive damages pursuant to 42 U.S.C. § 1981. This Court does not feel such relief is appropriate. Defendant's actions were not malicious or in willful derogation of plaintiff's rights. Though this Court has ultimately found against defendant, that alone does not justify an award of punitive damages.
NOTES
[1] To the extent that plaintiff seeks to sue "Life Uniform Company of Missouri," this is an improper designation of the defendant. The parties have considered Angelica Corporation the proper defendant throughout these proceedings, and this opinion will likewise consider Angelica Corporation as the defendant herein.
[2] This discussion also applies to plaintiff's claim under 42 U.S.C. § 1981. The only added dimension in this case due to plaintiff's claim under § 1981 is plaintiff's request for punitive damages. That request will be dealt with infra.