Sharon WHITE, Plaintiff,

v.

Thomas VATHALLY and City of
Haverhill, Defendants.

Civ. A. No. 81–2022–K.

United States District Court,
D. Massachusetts.

Sept. 19, 1983.

Kevin G. Powers, Lynn, Mass., for plaintiff.

Ashod N. Amirian, Asst. City Sol., Paul Kazarosian, Kazarosian & Colella, Haverhill, Mass., for defendants.

## OPINION

KEETON, District Judge:

This is an action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.,* and under the Civil Rights Act of 1871, 42 U.S.C. § 1983. Defendants, City of Haverhill and its then-mayor Thomas Vathally ("employer"), allegedly discriminated against plaintiff on account of her sex in failing to hire her as a Health Department Code Enforcement Inspector ("inspector"). Plaintiff seeks back pay and damages. Plaintiff does not seek reinstatement because after the commencement of this suit she was hired as an inspector at the salary she would have received had the alleged discrimination never occurred. This court has jurisdiction under 28 U.S.C. § 1343.

### I. *Applicable Law*

The issue in this case is whether plaintiff would have been hired as an inspector but for her sex. *Fisher v. Flynn,* 598 F.2d 663

(1st Cir.1979). "The central focus of the inquiry in a [Title VII disparate treatment] case such as this is always whether the employer is treating 'some people less favorably than others because of their race, color, religion, sex, or national origin.'" *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978), quoting *Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977).

■ A § 1983 equal protection claim arising from alleged employment discrimination involves the same elements as a Title VII disparate treatment claim. *See T & S Service Associates, Inc. v. Crenson,* 666 F.2d 722, 724 n. 2 (1st Cir.1981). A plaintiff alleging an equal protection violation must prove intentional discrimination. *Washington v. Davis,* 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). Both of plaintiff's claims will be discussed under Title VII rubric.

Under the analytic framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a Title VII plaintiff initially must establish a *prima facie* case of disparate treatment by proving that she applied for an available position for which she was qualified, but was rejected. If the plaintiff successfully establishes her *prima facie* case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employment action at issue. If the employer carries this burden, the plaintiff must show either that a discriminatory reason more likely motivated the employer, or that the employer's proffered explanation is unbelievable.

■ To meet its burden of production, the employer must articulate its reasons for plaintiff's rejection through "the introduction of admissible evidence . . . legally sufficient to justify a judgment for the defendant." *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 255, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981). The employer cannot rebut a *prima facie* case merely through an answer to the complaint or by argument of counsel. *Id.* at 255 n. 9,

101 S.Ct. at 1094 n. 9. Moreover, the employer's explanation of legitimate reasons must be clear and reasonably specific. *Id.* at 258, 101 S.Ct. at 1096. A "passing reference by just one of many witnesses to some deficiency" in the plaintiff's qualifications or a vague averment of good faith is insufficient to rebut the inference of discrimination. *Loeb v. Textron, Inc.,* 600 F.2d 1003, 1012 n. 5 (1st Cir.1979). However, when a reason is supplied by an answer to an interrogatory or in a deposition not strictly "introduced," this deficiency may be cured by considering witness testimony and reasonable inferences therefrom. *See Banerjee v. Board of Trustees of Smith College,* 648 F.2d 61, 63 n. 4 (1st Cir.), *cert. denied,* 454 U.S. 1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981); *cf. Burdine, supra* at 255–56, 101 S.Ct. at 1094–95 (requiring employer to articulate reason serves in part the purpose of "fram[ing] the factual issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext").

The Supreme Court clarified the nature of the employer's burden in *Burdine, supra.* The Court held that the employer only need raise a genuine issue of fact as to whether it discriminated against the plaintiff by introducing evidence setting forth the reason for the plaintiff's rejection. Thus, the burden of production shifts to the employer once the plaintiff has established a *prima facie* case, but "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 253, 101 S.Ct. at 1093.

Plaintiff correctly asserts that in order to meet his burden of production, the employer must articulate legitimate, nondiscriminatory reasons for the employment decision. *Burdine, supra.* Plaintiff argues also that a reason is "legitimate" only if it is shown to be reasonably related to job performance. This argument has more debatable nuances.

■ Where an employer institutes employment tests and qualifications that have a disparate impact on a Title VII protected

class, such requirements must be "shown to bear a demonstrable relationship to successful performance of the jobs" for which they are used. *McDonnell Douglas, supra* at 802 n. 14, 93 S.Ct. at 1824 n. 14, quoting *Griggs v. Duke Power Co.,* 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971). However, an employer may rebut a *prima facie* case of disparate treatment by simply explaining what it has done. *Board of Trustees v. Sweeney,* 439 U.S. 24, 25 n. 2, 99 S.Ct. 295, 296 n. 2, 58 L.Ed.2d 216 (1978). The employer does not have the "burden of persuading the court that it had convincing, objective reasons for preferring the chosen applicant above the plaintiff." *Burdine, supra* at 257, 101 S.Ct. at 1095. The employer need. only produce evidence sufficient to allow the factfinder reasonably to conclude that the employment decision was not motivated by discriminatory animus. *Id.* A weak correlation between the articulated criteria and job performance may support an inference that the employer's proffered explanation was a pretext for illegal discrimination, but it does not compel such an inference.

Plaintiff correctly contends that a showing that the employer's proffered reasons are a "pretext" *for sex discrimination* compels a judgment in her favor. Plaintiff also argues that a mere showing of pretext, as distinguished from pretext for sex discrimination, is sufficient to meet her burden. That is, she contends that her burden of proof may be met by showing merely that the employer's explanation is not the true reason for the employment decision. She reasons that if the employer's explanation is unworthy of credence, the presumption of illegal discrimination originally arising from her *prima facie* case has not been rebutted.

Plaintiff's argument misreads the underlying purpose and operation of the *McDonnell Douglas* framework for analysis. The dispositive question in a disparate treatment case is whether the employer's action was based on Title VII prohibited criteria. The *McDonnell Douglas* approach is intended to "sharpen the inquiry into the elusive factual question of intentional discrimination." *Burdine, supra* at 255 n. 8, 101 S.Ct. at 1094 n. 8.

■ In the Title VII context, *"prima facie* case" denotes the establishment of a legally mandatory, rebuttable presumption of discrimination rather than the production of enough evidence to permit the factfinder to infer discrimination. *Id.* at 254 n. 7, 101 S.Ct. at 1094 n. 7. That mandatory, rebuttable presumption arises only when plaintiff's evidence is such that, as the record then stands, there is a preponderance of evidence supporting a finding of discrimination. *Id.* at 253–54, 101 S.Ct. at 1093–94. Establishment of a *"prima facie* case" mandates a finding of intentional discrimination in the absence of any explanation by the employer. *Id.* at 254, 100 S.Ct. at 1094. However, "the presumption drops from the case" once the employer articulates a non-discriminatory reason for the employment decision. *Id.* at 255 n. 10, 101 S.Ct. at 1095 n. 10.

Contrary to plaintiff's contentions, therefore, the legally mandatory inference of discrimination that arises from plaintiff's initial evidence is dispelled once the employer meets its burden of production. At that point, plaintiff's burden of showing that the proffered reasons are pretextual "merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *Id.* at 256, 101 S.Ct. at 1095. The *prima facie* showing and inferences properly drawn from it continue to be relevant to the plaintiff's Title VII claim, but other evidence bearing on the employer's motive must also be considered. *Loeb, supra* at 1015 n. 14; *Burdine, supra* at 255, n. 10, 101 S.Ct. at 1095, n. 10.

■ Therefore, a showing that the proffered reason is not the true or entire explanation for an employment decision does not satisfy the plaintiff's burden of persuasion unless the fact finder is persuaded, by a preponderance of the evidence, that the employer discriminated against plaintiff on account of her sex. Merely showing that the articulated reason does not fully explain the employer's actions does not, by itself, compel the conclusion that it was a pretext

for illegal discrimination. Rather, it is circumstantial evidence to be weighed along with other evidence presented.

An employer has discretion to choose among qualified job applicants if this decision is not based on discriminatory criteria. The fact that a court believes an employer misjudged the qualifications of candidates does not establish a Title VII violation, although this may bear on whether the articulated reasons are pretexts for discrimination. *Id.* at 259, 101 S.Ct. at 1096.

A Title VII plaintiff can prove pretext by circumstantial evidence. *See, e.g., McDonnell Douglas, supra* at 804–805, 93 S.Ct. at 1825–1826. Evidence that an employer acted contrary to its customary policy in making an employment decision may support an inference of discrimination, *Lindsey v. Angelica Corp.,* 508 F.Supp. 363, 366 (E.D.Mo.1981), at least in the absence of evidence that the employer often did not follow its own stated policy. Title VII does not require an employer to implement or comply with any affirmative action policy. 42 U.S.C. § 2000e–2(j); *Burdine, supra* at 259, 101 S.Ct. at 1096. An employer who violates its affirmative action policy is not *per se* liable for a Title VII violation. *Cavallari v. Stetson,* 555 F.Supp. 561, 565 (D.Mass.1982).

Statistics establishing a pattern or practice of disparate treatment are probative but not conclusive in an individual disparate treatment case. *McDonnell Douglas, supra* at 805 n. 19, 93 S.Ct. at 1826 n. 19. However, statistical evidence drawn from an extremely small universe has little probative value. *Harper v. Trans World Airlines, Inc.,* 525 F.2d 409, 412 (8th Cir.1975). Similarly, evidence of an unbalanced workforce is accorded little weight absent accompanying statistics showing the composition of the job applicant pool. *Blizard v. Frechette,* 601 F.2d 1217, 1224 (1st Cir. 1979).

## II. *Findings of Fact and Conclusions of Law*

The parties have stipulated to certain facts. Plaintiff, a woman, was a C.E.T.A. employee working as Health Department Code Enforcement Inspector for the City of Haverhill from March 26, 1979 through September 19, 1980 when her 18-month C.E.T.A. appointment terminated. The duties of an inspector include checking buildings for health code violations and testing the lead content of paint. On August 31, 1980, Vincent Belfiore retired from his job as an inspector, thus creating a vacancy in the Health Department. From October 2 through October 5, 1980, defendants advertised the availability of this position. The advertisements did not mention any need or preference for a college degree.

Plaintiff applied for the job of inspector by submitting an application, resume, cover letter, and letters of recommendation to defendant Vathally. Plaintiff was qualified to perform the duties of an inspector. On or about October 13, 1980, Vathally, the city's sole appointing authority, hired Domenic Badolato, a white male applicant, for the position of inspector.

Under the evidence adduced, I find the following additional facts. Plaintiff held an associate's degree from Northern Essex Community College with a major in psychology. She also completed 77 credits at the University of Massachusetts, majoring in psychology, but did not have a bachelor's degree. Domenic Badolato held a bachelor's degree from Merrimack College with a major in biological science. He also completed 16 post-graduate credits at Merrimack, including courses in microbiology and biochemistry. Until Badolato's appointment, no inspector employed on a permanent basis held a college degree. Badolato was employed as an inspector under the C.E.T.A. program from mid-June of 1978 through mid-December of 1979.

Vathally met with plaintiff at her request on September 2, 1980. He informed her that there were no positions available at that time. Vathally arranged a meeting with Badolato to discuss his job application. Vathally spent more time talking with Badolato than he did with plaintiff.

Vathally asked Dr. Grillo, the city's environmental consultant, to review the applications of plaintiff and Badolato, the two finalists for the job. Grillo recommended Badolato for the job because of Badolato's superior educational background. Grillo had recommended Badolato for a previous job with the city, and Badolato had given Grillo's name to Vathally as a reference. Vathally did not consult with anyone else before hiring Badolato. Neither Vathally nor Grillo was as familiar with the duties of an inspector as were those persons who recommended plaintiff for the position.

In appointing Badolato, Vathally did not follow the recommended procedures set forth in the city's Equal Employment Opportunity ("E.E.O.") statement of policy. That policy provides that the E.E.O. Officer review the list of applicants for employment and advise the Mayor before a final selection is made. Vathally appointed Badolato before the E.E.O. Officer had an opportunity to review the entire list of applicants. Vathally also did not follow the recommended E.E.O. procedures for the two other appointments he made in October of 1980.

The evidence is incomplete concerning Vathally's record for hiring women for full-time non-clerical positions. The E.E.O. Officer testified that Vathally had never appointed a woman to a full-time non-traditional job. However, no statistics were offered to show the composition by sex of the job applicant pool for each available position or the exact number of full-time jobs that were filled during Vathally's tenure.

The parties do not dispute that plaintiff has established a *prima facie* case of discriminatory treatment. She is a member of a Title VII protected class. She applied for the job of inspector, for which she was qualified, but was rejected.

I conclude that defendants have sufficiently articulated their reason for rejecting plaintiff in favor of Badolato. In his answers to interrogatories and requests for admissions, and in his deposition, Vathally repeatedly stated that the decision to hire Badolato was based on Badolato's superior qualifications for the job—specifically, his educational background. Vathally testified at trial that he based his decision on Grillo's recommendation. Grillo in turn testified that he believed Badolato's bachelor's degree and extensive training in the sciences made him better qualified for the job.

Moreover, I find that educational background is a legitimate criterion on which to base employment decisions for the position at issue here. An employer reasonably could conclude that possession of a college degree with an emphasis in the sciences indicates self-discipline and an ability to complete tasks and follow instructions. Similarly, knowledge of the sciences reasonably could be viewed as potentially helpful to understanding, interpreting, and disseminating information concerning the environmental sanitation and building construction standards applicable in the work of a Health Department inspector. Moreover, plaintiff, by including her educational background in her resume, impliedly acknowledged the potential relevance of education to the employment decision.

I find that plaintiff has not shown by a preponderance of the evidence that defendants' articulated reason for its decision not to hire her was merely a pretext for illegal discrimination. Educational background is not so weakly correlated with job performance as to support an inference of pretext for discrimination. Vathally's unfamiliarity with details of the duties and responsibilities of an inspector make it more likely that he would rely on an objective, easily ascertainable criterion such as educational level achieved.

The evidence before me is insufficient to support an inference of pretext based on the relative qualifications of plaintiff and Badolato. On the objective criterion articulated by defendants—level of educational achievement—Badolato's qualifications were superior. The arguments advanced for regarding plaintiff as the wiser choice were: (1) to serve the interests of continuity in the job, and (2) to appoint the candidate most highly recommended for the job.

The difference between the two finalists in the former respect was perceptible but not substantial since Badolato's 18-month term as inspector had ended only months before that of plaintiff. Plaintiff submitted seven letters in support of her application. Four letters did not specifically recommend plaintiff for the position here at issue. Papachriston's letter recommended plaintiff "[i]n order to maintain continuity in the department." As noted before, appointment of either of the two finalists would serve this end. The two remaining letters supported plaintiff's appointment as inspector. Although this is relevant as circumstantial evidence, neither separately nor together do these facts show that the qualifications of the two finalists were so disparate as to support an inference that discriminatory animus affected the appointing official's decision.

The evidence does support a finding that Badolato's educational qualifications were not the sole reason Vathally chose him over plaintiff. However, it does not follow—and I cannot find from a preponderance of the evidence—that Vathally was motivated by a discriminatory animus. The evidence concerning Vathally's record of appointing women to permanent, full-time positions is inconclusive. No evidence was introduced regarding the composition of the applicant pool for each available job. Any inference of disparate treatment of plaintiff arising from Vathally's failure to follow E.E.O. recommended procedures is undercut by the fact that Vathally did not follow these procedures in any of his October, 1980 appointments.

It is clear from the evidence that both plaintiff and her final competitor for the position were well qualified applicants. Even though other considerations beyond those articulated in evidence may have been factors in the decision, I cannot find on the evidence before me that plaintiff would have been appointed but for her sex.

For the foregoing reasons, judgment will be entered for defendants.