**Adrianne DEVLIN, Plaintiff,**

v.

**FEDERAL RESERVE BANK OF ST. LOUIS, Defendant.**

**No. 85–657C(1).**

United States District Court, E.D. Missouri, E.D.

May 13, 1986.

Steven K. Brown, Clayton, Mo., Adrianne Devlin, Gillespie, Ill., for plaintiff.

Henry D. Menghini, Evans & Dixon, St. Louis, Mo., for defendant.

## MEMORANDUM

NANGLE, Chief Judge.

Plaintiff Adrianne Devlin brought this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* Plaintiff alleges that she was discharged from employment and treated differently than similarly situated male employees on account of her gender and in retaliation for her filing of a complaint with the Equal Employment Opportunity Commission (EEOC).

This case was tried to this Court sitting without a jury. This Court having considered the pleadings, the testimony of the witnesses, the documents in evidence, and the stipulations of the parties, and being fully advised in the premises, hereby makes the following findings of fact and conclusions of law, as required by Rule 52 of the Federal Rules of Civil Procedure. *Fed.R.Civ.P.* 52.

## FINDINGS OF FACT

1. Plaintiff Adrianne Devlin is a female and at all times relevant herein a citizen of the United States.

2. Defendant Federal Reserve Bank of St. Louis is engaged in the business of central banking and has offices located in St. Louis, Missouri.

3. On August 17, 1981, plaintiff began her employment with defendant as an Accountant, Grade 9. In January, 1982, she was promoted to the Electronic Data Processing (EDP) Department as an EDP Auditor B, Grade 12. As an EDP Auditor B, plaintiff was to plan, organize, and supervise less complex audits with limited direction; review EDP operations for compliance with prescribed policies and rules; develop recommendations relating to audit observations and report these to the Audit Manager; develop new audit procedures and revised existing procedures; plan, develop, test, and use specialized audit software; conduct or assist special EDP audit assignments; and assist audits as assigned. To perform these duties adequately, an EDP Auditor B must deal effectively with auditors and other bank personnel.

4. At the end of March, 1983, the EDP audit staff consisted of Judith Nowers, Manager, Grade 15; Jeffrey M. Dale, EDP Auditor A, Grade 13; Gary M. Lewis, EDP Auditor A, Grade 13; Dennis Soung, EDP Auditor A, Grade 13; James R. Waugh, EDP Auditor A, Grade 13; and plaintiff, EDP Auditor B, Grade 12. In October, 1983, Gary Lewis and Jeffrey Dale were promoted to Senior EDP Auditor, Grade 14. There were no males similarly situated to the plaintiff. Plaintiff was the only EDP Auditor B.

5. Plaintiff was trained in her duties by Judith Nowers, John Anselmo, and James Waugh. In addition, plaintiff attended the following training programs: Evaluating Internal Controls, April 7–9, 1982; Assertiveness Training, May 6, 1982; 10th Annual Internal Conference, June 21–24, 1982; Internal Audit Seminar I, June 28–July 2, 1982; Information Systems for EDP Auditors, November 15–19, 1982; Statistical Sampling Seminar, March 23–25, 1982; PA-NAUDIT training, June 28–29, 1982; Auditor's Role in System Development, May 2–4, 1983; YOURDON Structure Design and Program, May 9–15, 1983; Personal Computing Workshop, May 16, 1983; SCAD-FRB Accounting, June 21–23, 1983.

6. In November, 1982, Judith Nowers evaluated plaintiff's performance. Plaintiff earned 32 out of a possible 50 points. As the evaluation indicated, plaintiff communicated well with co-workers. Nowers

also indicated that plaintiff needed to improve the following areas: preparation, performance, and presentation of audits, timely completion of tasks, and ability to use self-training resources. Nowers suggested that plaintiff's casual approach, negative expectations, and inability to accept criticism would impede improvement of plaintiff's performance.

7. In July, 1983, Nowers offered plaintiff her first opportunity to be an auditor-in-charge of an audit. Nowers offered to provide plaintiff with other employees to assist with those areas of the audit unfamiliar to plaintiff. Plaintiff declined the opportunity.

8. Plaintiff was unable to perform consistently at the level required by her position. Nowers' frustration with plaintiff's performance motivated her to try a different approach to managing plaintiff. In August of 1983, plaintiff was informed that her job performance had to improve. At that time, Nowers chose Gary Lewis and Jeffrey Dale to assign work to the plaintiff and to evaluate the results of this work. Richard Kay, Nowers' supervisor, authorized this delegation of responsibility. Lewis and Dale were to provide plaintiff with written assignments and evaluations. No other EDP auditors were given assignments or evaluated in this manner.

9. Gary Lewis and Jeffrey Dale were EDP Auditors A at the time of the delegation and possessed the necessary experience to undertake these responsibilities. As auditor-in-charge of certain audits on which plaintiff worked, Dennis Soung had authority to give plaintiff work assignments.

10. From August, 1983 through January, 1984, as evaluations of plaintiff's work by Lewis, Dale and Nowers indicate, plaintiff's performance was inconsistent—some assignments were performed adequately and others were not. These evaluations indicate that plaintiff allocated time to unauthorized projects, that she was inattentive to neatness and detail, that she did not consistently complete assigned tasks, and that she still had not performed an audit as auditor-in-charge. As Jeffrey Dale noted on one evaluation, plaintiff had not developed an "audit sense" in that she often failed to realize the significance of audit procedures. On most assignments, the evaluating auditor assigned a letter grade to plaintiff's performance. These grades were intended to help plaintiff judge her performance and were not intended to demean plaintiff because she was a woman.

11. From August, 1983, shortly after the special assignment procedures began, through November 15, 1983, Judith Nowers kept a log of plaintiff's performance and Nowers' contacts with plaintiff.

12. The Court credits the testimony of Judith Nowers that the purpose of the written assignments and evaluations was to provide plaintiff with more frequent and more detailed evaluation of plaintiff's work. By subjecting plaintiff's work to close scrutiny, defendant did not intend to discriminate against the plaintiff on the basis of her sex.

13. On September 14, 1983, plaintiff filed charges of employment discrimination on the basis of sex with the Equal Employment Opportunity Commission (EEOC). The EEOC mailed the notice of the charge to defendant on or about September 19, 1983. No evidence was presented as to the precise date the notice was received by the defendant. Judith Nowers, plaintiff's supervisor, learned of plaintiff's filing of the charge of discrimination after the charge was actually filed and received by defendant.

14. On September 23, 1983, plaintiff received her first personnel notice from the Bank. The notice indicated that improvement was needed in the following areas: initiative; follow-through; cooperation; thoroughness of analysis; and attention to detail, clarity, organization, and completeness in written and oral presentations. The notice indicated that continued performance at this unsatisfactory level was grounds for dismissal. This Court finds that the notice was sent to inform plaintiff of her employer's dissatisfaction with her performance and not in retaliation for

plaintiff's filing of an EEOC complaint. Further, plaintiff was not treated differently within her department as a result of the filing of her complaint.

15. In September and October of 1983, plaintiff and Nowers developed a set of performance objectives to improve plaintiff's performance.

16. On October 25, 1983, Judith Nowers conducted a performance evaluation of plaintiff's work from April 1, 1982 through August 1, 1983. On a scale of 10, plaintiff received a .43, an unsatisfactory rating. As the evaluation noted, plaintiff needed to improve her written and oral communication, analytical skills, attention to detail, initiative, and human relation skills. The evaluation set December 31, 1983 as the target date for improvement.

17. Plaintiff received her second personnel notice on November 9, 1983. As the notice indicated, plaintiff's work was inconsistent and still below a satisfactory level. The notice further indicated that continued performance at the same level would lead to termination. Plaintiff refused to sign this personnel notice. On November 20, 1983, plaintiff and Nowers reviewed the performance objectives established in September and October of 1983. Plaintiff had not consistently improved her performance in communication skills, analytical skills, attention to detail, initiative, or human relation skills. In addition, plaintiff continued to spend too much time completing assignments. Plaintiff was given until the middle of January, 1984 to improve her performance. On November 16, 1983, acting on behalf of the EEOC, the Civil Rights Enforcement Agency (CREA) held a fact-finding conference attended by plaintiff, her attorney, Nowers, and an attorney for the Federal Reserve Bank. Nowers learned at the conference that plaintiff objected to the assignment of letter grades to her work. Thereafter, Nowers and the assigning auditors discontinued the assignment of letter grades.

18. During the week of December 19, 1983, plaintiff indicated her belief that her employment would be terminated. Plaintiff indicated to Jeffrey Dale that she did not want to resign but wanted to be terminated to improve her case before the EEOC.

19. As evaluations of plaintiff's work during December, 1983 and January, 1984 indicate, plaintiff needed excessive supervision, spent too much time on assignments, and lacked attention to detail.

20. Following each evaluation and personnel notice, plaintiff was given the opportunity to comment on the evaluation. Plaintiff disagreed frequently with the evaluation, but she responded that she would document her answers elsewhere. Plaintiff failed to provide any documentation to Nowers, Dale, Lewis, Soung, or Kay to explain her performance or her disagreement with the evaluations or personnel notices.

21. Plaintiff was discharged because she did not perform her duties satisfactorily, not because she was a woman. Plaintiff's employment with the defendant was terminated on January 23, 1984. On January 24, 1984, the Federal Reserve Bank issued plaintiff's third personnel notice, which indicated that plaintiff's performance had not significantly improved since the last notice. Defendant did not attempt to locate alternative employment for the plaintiff. The defendant does not locate employment for any of its employees as an alternative to discharge for poor performance.

22. On December 20, 1984, the EEOC mailed to plaintiff a "Notice of Right to Sue" letter. This action was filed on March 20, 1984.

23. On May 29, 1984, a male was hired as an EDP Auditor B to replace plaintiff.

24. The number of male and female accessions, promotions, and lateral moves within the Federal Reserve Bank of St. Louis are set out below:

## Number Of Women Applying For Professional Positions

| Calendar Year | 1981 | 1982 | 1983 | 1984 |
|---|---|---|---|---|
| | 27 | 37 | 43 | 127 |

## Number Of Men Applying For Professional Positions

| Calendar Year | 1981 | 1982 | 1983 | 1984 |
|---|---|---|---|---|
| | 69 | 104 | 68 | 150 |

## Number Of Female Accessions In Professional Job Category

| Calendar Year | 1981 | 1982 | 1983 | 1984 |
|---|---|---|---|---|
| Accessions | 11 | 5 | 4 | 12 |
| Promotions | 4 | 8 | 6 | 19 |
| Laterals | | | 1 | 1 |

## Number Of Male Accessions In Professional Job Category

| Calendar Year | 1981 | 1982 | 1983 | 1984 |
|---|---|---|---|---|
| Accessions | 11 | 12 | 12 | 14 |
| Promotions | 10 | 14 | 14 | 15 |
| Laterals | 2 | 3 | 4 | 5 |

## CONCLUSIONS OF LAW

This Court has subject matter jurisdiction of this case pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 2000e–5(f)(3). Defendant is an employer as defined in 42 U.S.C. § 2000e(b).

 In a Title VII cause of action, plaintiff has the initial burden of proving by a preponderance of the evidence a prima facie case of discrimination. If plaintiff is successful, defendant must then articulate a legitimate non-discriminatory reason for its actions. In order to sustain this burden, defendant need only present evidence which raises a genuine issue of fact as to whether it discriminated against plaintiff. The burden of producing evidence then shifts back to plaintiff, who must show by a preponderance of the evidence, that defendant's explanation was merely a pretext for discrimination within the meaning of the statute. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 98 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Tate v. Weyerhauser Co.*, 723 F.2d 598, 602 (8th Cir.1983); *Washington v. Dayton Hudson Corp.*, 610 F.Supp. 1120 (E.D.Mo.1985). Once defendant responds to plaintiff's proof by offering evidence of the reason for its actions, the presumption "drops from the case" and the Court must then determine whether there was discrimination within the meaning of Title VII. *United States Postal Service Board of Governors v. Aikens*, 460 U.S. 711, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). The ultimate "'factual inquiry' in a Title VII case is 'whether the defendant intentionally discriminated against the plaintiff'." *Id.* at 715, 103 S.Ct. at 1482, *citing Texas Department of Community Affairs*, 450 U.S. at 253, 101 S.Ct. at 1093. Plaintiff always retains the burden of persuasion with respect to this ultimate factual issue. The division of intermediate evidentiary burdens serves merely to allow the court to evaluate more easily the evidence as it bears on the critical issue of discrimination. *Id.*

 The elements of a prima facie case in a Title VII cause of action vary according to the particular claim that a plaintiff asserts. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 n. 13, 93 S.Ct. 1817, 1824 n. 13, 36 L.Ed.2d 668 (1973).

 Plaintiff asserts two claims. First, plaintiff alleges disparate treatment as a basis for recovery. Disparate treatment occurs where an employer treats some people less favorably than others because of their race. *International Broth-*

*erhood of Teamsters v. United States*, 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977). In the context of terminations, a prima facie case of disparate treatment requires the plaintiff to show: 1) she was a member of a protected class; 2) she was capable of performing the job; and 3) she was discharged from the job. *Johnson v. Bunny Bread Company*, 646 F.2d 1250, 1253 (8th Cir.1981). Second, plaintiff alleges her discharge was in retaliation for bringing a complaint before the EEOC. Under 42 U.S.C. § 2000e–3(a), it is an unlawful employment practice for an employer to discriminate against an employee because she has made a charge or participated in an investigation, proceeding, or hearing under the Civil Rights Act. In the context of retaliatory discharge, plaintiff establishes a prima facie case by proving 1) that she engaged in an activity protected by the Civil Rights Act, 2) that the employer was aware of plaintiff's activity, 3) that plaintiff was subsequently discharged, and 4) that discharge followed the protected activity so closely as to justify an inference of retaliatory motive. *Womack v. Munson*, 619 F.2d 1292, 1296 n. 6 (8th Cir.1980), *cert. denied*, 450 U.S. 979, 101 S.Ct. 1513, 67 L.Ed.2d 814; *see also Mosley v. General Motors Corp.*, 497 F.Supp. 583, 589 (E.D.Mo.1980), *aff'd.* 691 F.2d 504 (8th Cir.1982).

■■■ Plaintiff alleges that she was terminated from her job on the basis of her gender. In the opinion of this Court, plaintiff fails to establish a prima facie case with respect to this claim. The evidence establishes that plaintiff was not performing her job adequately. *See Findings of Fact Nos.* 8, 10, 14, 16, 17, and 19. Plaintiff was informed of defendant's dissatisfaction with her performance through both the formal notice procedure of the bank and the informal evaluations conducted by plaintiff's supervisor, Judith Nowers. Alternatively, assuming that plaintiff established a prima facie case, plaintiff failed to satisfy the performance requirements of her position. Thus, defendant establishes a legitimate non-discriminatory reason for plaintiff's discharge. *See Findings of Fact Nos.* 8, 10, 14, 16, 17, and 19. Plaintiff failed to establish that this explanation served as a pretext for sex discrimination. *See Findings of Fact Nos.* 8, 10, 12, and 21. Indeed, this Court concludes that plaintiff failed to demonstrate that gender played any part in defendant's decision to terminate her.

■■■ Plaintiff attempts to demonstrate that defendant's proferred explanation is a mere pretext for illegal discrimination. As evidence of pretext, plaintiff notes that she was replaced by a man. As plaintiff further argues, a plaintiff may rebut defendant's explanation by demonstrating that defendant deviated from established rules or procedures when dealing with the plaintiff. In particular, plaintiff points to the frequent evaluations of plaintiff's work by fellow employees and the grading system used to evaluate her work. *See Lindsey v. Angelica Corp.*, 508 F.Supp. 363 (E.D.Mo. 1981) (if company customarily notifies applicant of decision not to hire, then failure to notify is evidence of pretext).[1] This Court finds plaintiff's evidence insufficient to rebut defendant's explanation.

Plaintiff also presents statistical evidence of the number of males and females hired, promoted, and moved laterally during 1981–1984. *See Findings of Fact No.* 24. As the statistics indicate, fewer females than males applied for professional positions at the Federal Reserve Bank. However, plaintiff presents no evidence that defendant discouraged women from applying for any position. In all years except 1983, a greater percentage of women than men who applied were hired. In all years except 1984, a greater percentage of women than men were promoted.

■■■ As the statistical evidence shows, during 1981–1984 more men than women made lateral moves within the

---

1. This evidence is discussed more fully in the portion of this opinion pertaining to plaintiff's allegations of retaliation.

bank. As plaintiff argues, if defendant found plaintiff's performance unsatisfactory, defendant could have transferred her to another position; however, since more men than women made lateral moves, plaintiff concludes that defendant did not transfer plaintiff because she was a woman. This tenuous logic is flawed for a number of reasons. First, plaintiff presented no evidence of the number of women who applied for lateral moves, nor did plaintiff demonstrate that women were discouraged from applying for such transfers. Second, plaintiff presented no evidence that any employee who made a lateral move was performing so poorly that they would be terminated if they did not transfer. Indeed, defendant does not transfer employees as an alternative to discharge due to poor performance. *See Findings of Fact No.* 21. Finally, plaintiff fails to prove any causal connection between her statistical evidence and the allegedly disparate treatment which she received. Generally, statistics concerning an employer's employment practices may help to establish a showing of pretext, but such statistics are rarely determinative in individual disparate treatment cases. *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 580, 98 S.Ct. 2943, 2951, 57 L.Ed.2d 957 (1978); *McDonnell Douglas Corp. v. Green,* 411 U.S. at 805, 93 S.Ct. at 1825; *Person v. J.S. Alberici Construction Co.,* 640 F.2d 916, 919 (8th Cir.1981); *Osborne v. Cleland,* 468 F.Supp. 1302, 1303–04 (E.D. Ark.1979), *aff'd* 620 F.2d 195 (8th Cir.1980); *see generally* B. Schlei & P. Grossman, *Employment Discrimination Law* 1315 (1983). Here, plaintiff has utterly failed to demonstrate any connection between the treatment she received as a result of her poor performance and the statistical evidence she presented.

■ Plaintiff also alleges that she was treated differently and ultimately terminated in retaliation for filing charges with the EEOC. In the opinion of this Court, plaintiff has established a prima facie case with respect to this claim. Plaintiff established 1) that she filed a charge with the EEOC, *see Sias v. City Demon-*

*stration Agency,* 588 F.2d 692, 694–95 (9th Cir.1978) (filing an EEOC complaint protected regardless of its merit); 2) that the bank was aware of the lawsuit, *see Findings of Fact No.* 13; 3) that she was discharged, *see Findings of Fact No.,* 21; and 4) that defendant initiated its discharge procedure by issuing a personnel notice within two weeks of the filing of the charge. Indeed, unless defendant articulated some explanation, the coincidence of plaintiff's charge and the first personnel notice creates a strong case of retaliation. However, as discussed above, defendant has presented a legitimate non-discriminatory reason for treating plaintiff differently and for ultimately discharging her from employment. Simply stated, plaintiff failed to perform her duties adequately.

■ This Court concludes that plaintiff has failed to demonstrate that defendant's proffered explanation is a mere pretext for unlawful discrimination. As plaintiff argues, the defendant departed from its usual procedures by authorizing auditors to assign work to plaintiff and then permitting these auditors to give plaintiff letter grades upon completion of the assignments. Plaintiff has failed to demonstrate that defendant had any illegal discriminatory motive in assigning and evaluating plaintiff's work differently from other EDP Auditors. *See Findings of Fact No.* 12. As additional evidence of pretext, plaintiff offers the log kept by her supervisor, Judith Nowers. Regarding Nowers' log, this Court cannot conclude under the present circumstances that the log demonstrates a discriminatory intent on the part of defendant. Plaintiff's performance was a legitimate concern of her supervisor. Consequently, Nowers was entitled to record her contacts with plaintiff. Since no other EDP employee presented similar performance problems, it is not unusual that Nowers did not keep a log of their performance.

■ What plaintiff presented was a wrongful discharge case, exacerbated to some degree by a conflict of personalities between the plaintiff and her supervisor.

**398**

It is unclear whether one or both of these individuals bear responsibility for their poor relationship. In any event, the rancor between Devlin and Nowers is not actionable in a case before this Court in the absence of any illegal discriminatory intent. The most common mistake in discrimination cases is to deem a personality conflict or similar circumstances to be discrimination actionable under Title VII. The key issue here is not whether Nowers was a well-liked person or admired administrator. The crucial issue is whether her acts constituted retaliation or sexual discrimination. This Court finds that they do not. Accordingly, plaintiff's claims are dismissed, and judgment is entered in favor of the defendant.