**T & S SERVICE ASSOCIATES, INC., et al., Plaintiffs, Appellees,**

v.

**John CRENSON, et al., Defendants, Appellants.**

**T & S SERVICE ASSOCIATES, INC., and Robert L. Thomas, Plaintiffs, Appellants,**

v.

**John CRENSON, et al., Defendants, Appellees.**

**Nos. 81–1177, 81–1243.**

United States Court of Appeals, First Circuit.

Argued Sept. 17, 1981.

Decided Dec. 17, 1981.

Michael P. DeFanti, Providence, R. I., with whom Stephen A. Finn and Hinckley, Allen, Salisbury & Parsons, Providence, R. I., were on brief, for T & S Service Associates, Inc., et al.

Edward L. Gerstein, Providence, R. I., with whom Walter R. Stone and Stone, Clifton & Clifton, Providence, R. I., were on brief, for John Crenson, et al.

Before COFFIN, Chief Judge, CAMPBELL, Circuit Judge, MURRAY,* Senior District Judge.

COFFIN, Chief Judge.

T & S Service Associates, Inc., a minority-owned food catering service, brought suit in federal district court against the School Committee of the Town of Barrington, Rhode Island [hereinafter "Committee"] and the Barrington School Superintendent, alleging that the defendants had discriminated against T & S on account of race in the awarding of federally funded school lunch contracts. The district court, 505 F.Supp. 938, after a hearing, denied plaintiff's motion for a preliminary injunction. The parties then agreed to submit the case to the court, sitting without a jury, on the basis of the transcript of the preliminary injunction hearing held some three years previously. The court held that the defendants had violated 42 U.S.C. § 1981, awarded T & S $22,787 in compensatory damages, and declined to assess punitive damages. The defendants [hereinafter "appellants"] now appeal, arguing that the district court erred in finding them guilty of discrimination. T & S also appeals from the court's denial of punitive damages.

On July 1, 1977, the Barrington School Department solicited bids for a private food service contractor as a result of its earlier decision to withdraw from the state-managed school lunch program. Five bids were received. The bids were initially examined and screened by defendant superintendent and the assistant superintendent, who had prepared the bid specifications. In a memorandum to the Committee, the superintendent recommended that the contract be awarded to Servomation because Servomation was the lowest bidder and it met all qualifications. T & S was found to be unqualified since its bid failed to meet five requirements stated in the bid specifications. The Committee subsequently awarded the contract to Servomation.

By early August, however, the Committee learned that two different types of bids had been received.[1] Moreover, they real-

* Of the District of Massachusetts, sitting by designation.

1. Because the school's bid specifications were confusing, two types of bids were received. Four bidders, including T & S, submitted "profit and loss" bids. In this type of bid, the vendor agrees in advance to provide meals at a fixed price; the vendor bears all the expenses and receives all the revenues, including government subsidies. Thus whether the vendor makes a profit or takes a loss depends on what its revenues and expenses turn out to be. The only other bidder, Servomation, submitted a

ized that the meal price quoted by Servomation was artificially low because it did not include substantial federal meal subsidies. In spite of this knowledge, the Committee decided to go ahead with Servomation, though the duration of the contract was reduced from three years, as stated in the bid specifications, to one year.

## I. LIABILITY

T & S argues that the appellants intentionally discriminated against it throughout the entire bidding process. While lacking explicit proof of discrimination, T & S urges, and the district court found, that discrimination can be inferred from appellants' conduct. The evidence is undisputed that school administrators visited the operations of three or four of the bidders; T & S was never visited. Moreover, T & S alleges that its bid met all of the bid specifications and that it was in fact the lowest bidder. Since the Committee had learned by early August that Servomation was not actually the low bidder, its decision to go forward with Servomation instead of contacting T & S is, according to T & S, further proof of discrimination.

■ In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and subsequent cases, the Supreme Court set forth a methodology for evaluating evidence in cases alleging purposeful discrimination where direct proof of intent is lacking. "First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant 'to articulate some legitimate, nondiscriminato-

ry reason for the employee's rejection.' . . . Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981), *quoting McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824. Though developed in the context of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, this procedural technique "is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). We therefore agree with the district court that the *McDonnell Douglas* principles are applicable to a claim of intentional discrimination under 42 U.S.C. § 1981.[2] *See, e.g., Banerjee v. Board of Trustees of Smith College*, 648 F.2d 61, 62–63 & n.1 (1st Cir. 1981); *Hudson v. International Business Machines Corp.*, 620 F.2d 351, 354 (2d Cir. 1980); *cf. Loeb v. Textron, Inc.*, 600 F.2d 1003, 1014–15 (1st Cir. 1979) (applying *McDonnell Douglas* methodology to alleged violation of the Age Discrimination in Employment Act since "*McDonnell Douglas* meets a problem of proof that may be present in any case where motivation is in issue, but does not alter the traditional burdens of proof in civil litigation, and is not intended to deflect the factfinder from the central issue of whether the employer was motivated by discriminatory factors").

"management fee" bid. Under this scheme, the vendor simply manages the school's food service and receives a small set fee for each meal served. The school is responsible for paying all costs and taking in all revenues.

2. T & S argues on appeal that the district court should have considered its claim under 42 U.S.C. § 1983 as well as under 42 U.S.C. § 1981. But T & S fails to note any particular way in which analysis under § 1983 (presumably for violation of the equal protection clause

of the Fourteenth Amendment) would differ from that under § 1981, at least in this case where it proceeds under a disparate treatment, rather than a disparate impact, theory. Under the equal protection clause, as here, T & S must prove purposeful discrimination. *See Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976). Thus, the *McDonnell Douglas* principles would seem equally applicable under either provision.

We are unable to agree, however, with the district court's application of *McDonnell Douglas* to the facts of this case. The elements of a prima facie case of discrimination in the context of a public bidding decision necessarily differ from the elements described in *McDonnell Douglas*, where the issue was discrimination in the hire of individual employees.[3] A public bid offering, unlike the usual employment decision, typically finds the employer seeking only a single contractor out of a rather limited pool of companies which submit proposals. When the employer selects a bid, his search ends. In addition, the very concrete element of price plays a large role in the selection process—and this is a factor controlled by the contractor.

In the public bidding situation, the fact that a qualified minority firm's bid was rejected would not in our view support an inference that it was more likely than not that the employer's decision was based on discriminatory criterion. *See Furnco Construction Corp. v. Waters, supra*, 438 U.S. at 576, 98 S.Ct. at 2949. If the minority firm's bid is no more qualified than the accepted bid, and offers no price or other significant advantages to the employer, then the employer's decision to reject the minority bid would not create an inference of discrimination. *See Burdine, supra*, 450 U.S. at 258–59, 101 S.Ct. at 1096–97. On the other hand, to require the minority bidder to show in every case that its bid was the lowest one would preclude a qualified minority bidder with a slightly higher bid price but with superior credentials from meeting the prima facie case, even if it would likely have been chosen in the absence of discrimination.

Accordingly, modifying the *McDonnell Douglas* guidelines to fit this situation, we believe that the present plaintiff, T & S, would prove its prima facie case by showing, by a preponderance of the evidence, that (i) T & S is a minority-owned firm; (ii) T & S's bid met the specifications required of those competing for the contract; (iii) the T & S bid was significantly more advantageous to the Committee than the bid actually awarded, whether in terms of price or some other relevant factor;[4] and (iv) the Committee selected another contractor.

In order to guide the district court on remand, we note several additional problems with the court's analysis. First, we are troubled by the court's finding that the T & S bid met all the bid specifications. Second, after concluding that T & S had demonstrated a prima facie case, the court apparently imposed a burden of persuasion, rather than a burden of production, on appellants to articulate a legitimate nondiscriminatory reason for rejecting the T & S bid. Finally, the court's discussion of T & S's burden of showing that the reasons articulated by appellants were actually a pretext for discrimination was confusing and inadequate.

In the first stage of the *McDonnell Douglas* inquiry a plaintiff has the burden of proving by a preponderance of the evidence a prima facie case of discrimination. While direct proof of discrimination is not re-

---

3. In *McDonnell Douglas*, there were four elements in the prima facie case: (1) that the plaintiff belonged to a racial minority; (2) that he applied and was qualified for a job for which the employer was seeking applicants; (3) that, despite his qualifications, he was rejected; and (4) that, after his rejection, the position remained open and the employer continued to seek applicants. 411 U.S. at 802, 93 S.Ct. at 1824. We have previously recognized that the elements of the prima facie case may vary depending upon the context. *See Loeb v. Textron, Inc.*, 600 F.2d 1003, 1013–14, 1016–17 (1st Cir. 1979).

4. This formulation of the third factor is reinforced by federal procurement regulations which require government agencies to award bids not to the lowest price bidder, but rather to the bidder who is responsive to the invitation and whose bid "will be most advantageous to the Government, price and other factors considered." 41 C.F.R. § 1–2.407–1(a) (1980); 7 C.F.R. § 210.19a(j)(1) (1981) (national school lunch programs). Among the factors which may be considered under these regulations are variances from the bid specifications, differences in inspection programs, contractor integrity, and record of past performance. 41 C.F.R. § 1–2.407–5 (1980); 7 C.F.R. § 210.19a(k) (1981).

quired, a plaintiff must prove at least "that his rejection did not result from the two most common legitimate reasons on which an employer might rely to reject a job applicant: an absolute or relative lack of qualifications or the absence of a vacancy in the job sought." *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 358 n.44, 98 S.Ct. 1843, 1866 n.44, 52 L.Ed.2d 396 (1977). In this case, the superintendent stated in a memorandum to the Committee that the T & S bid was deficient in five ways. The district court disagreed and found T & S fully qualified under the bid specifications.

While recognizing that the district court's factual findings cannot be set aside unless "clearly erroneous", Fed.R.Civ.P. 52(a), we are particularly troubled by the court's finding that the T & S bid complied with the specification stating that the successful bidder "must provide [present] employees an opportunity to stay with" the food program. The T & S bid promised only that current employees would be given "first preference of all job openings". The Servomation bid, by contrast, states its intention to "offer employment to the present staff". The chairman of the Committee testified that they "were concerned with the policy of hiring, which had become a very critical and sensitive issue in town" and the superintendent testified that granting "first preference" to existing employees did not meet the Committee's requirement that the successful bidder guarantee jobs to current employees. While the court may have discredited their testimony, it was bound to measure the T & S bid against the specifications as established and applied by the appellants, as long as those qualifications were applied equally to all bidders. "The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to

... liability, although this may be probative of whether the employer's reasons are pretext for discrimination." *Burdine, supra*, 450 U.S. at 259, 101 S.Ct. at 1096.

Of course, the fact that the T & S bid did not meet all the formal bid specifications would not preclude a finding that discrimination occurred. The Servomation bid, for example, was accepted even though it failed to comply with the requirement that the vendor accept responsibility for cleaning certain parts of the kitchens. Moreover, the testimony of the Committee chairman indicated, perhaps mistakenly, that the SAGA bid was forwarded to the Committee by the superintendent in spite of the fact that it bid for a one year contract, rather than a three year contract as specified by the bid requirements.[5] On remand, the court should determine whether the T & S bid met all of the Committee's minimum specifications; T & S must show that it "was sufficiently qualified to be among those [bidders] from whom a selection, to some extent discretionary, would be made". *Banerjee v. Board of Trustees of Smith College*, 496 F.Supp. 1148, 1155 (D.Mass. 1980), aff'd, 648 F.2d 61, 62–63 (1st Cir. 1981).

Assuming that a prima facie case is made out, defendants must carry the burden of articulating a legitimate, nondiscriminatory reason for rejecting plaintiff's bid. The burden of proof, however, remains at all times with plaintiff; defendants are required only to introduce admissible evidence which raises a genuine issue of fact as to whether they discriminated against plaintiff. *Burdine, supra*. Here, the appellants clearly articulated at least two reasons which satisfied their burden of production.[6] First, their testimony indicated that the contract was originally granted to Servomation because they believed Servomation to

---

**5.** The chairman's testimony may have confused the SAGA bid with the ARA bid; in any event it was inconsistent with the superintendent's memorandum. We leave it to the district court to resolve this factual issue.

**6.** Appellants also offered testimony, of course, indicating that T & S was not qualified because

it failed to meet the bid specifications. Whether this issue is considered as part of the prima facie case or as part of the third stage in the *McDonnell Douglas* inquiry, the plaintiff has the burden of proving that it was qualified and that defendants' argument to the contrary is pretextual.

be the low bidder. Although this conclusion turned out to be wrong, and was arguably the result of poor or negligent judgment, it does raise a genuine issue of fact as to whether this decision was actually a result of discrimination. Second, after learning of their mistake, appellants testified that they decided to go ahead with Servomation because there was insufficient time to engage in rebidding before school began; moreover, Servomation had already begun preparation and the Committee was generally pleased with its services. In light of this testimony, we construe the district court's statement that "the Defendants have failed to articulate a legitimate nondiscriminatory reason for the rejection of the Plaintiff's bid" as imposing a burden of persuasion, rather than a burden of production, on the defendants. This conclusion is strengthened by the court's earlier statement that "the burden of proof" shifts to the defendants. A remand is therefore necessary. *See, e.g., Board of Trustees of Keene State College v. Sweeney*, 439 U.S. 24, 99 S.Ct. 295, 58 L.Ed.2d 216 (1978).

Once defendants have satisfied their burden of production, plaintiff must demonstrate by a preponderance of the evidence that the asserted reasons are pretextual. This may be done either by showing that the asserted reasons were insufficient to explain the employer's decision or were not applied in a nondiscriminatory fashion, or by proving that a discriminatory reason more likely motivated the employer. *Burdine, supra*, 450 U.S. at 256, 101 S.Ct. at 1095; *McDonnell Douglas, supra*, 411 U.S. at 804–05, 93 S.Ct. at 1825.

> "While an employer's judgment or course of action may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was a pretext for illegal discrimination. The employer's stated legitimate reason . . . does not have to be a reason that the judge or jurors would act on or approve. . . . The reasonableness of the employer's reasons may of course be probative of whether they are pretexts. The more idiosyncratic or questionable the employer's reasons, the easier it will be to expose it as a

pretext, if indeed it is one. [The] focus is to be on the employer's motivation, however, and not on its business judgment." *Loeb v. Textron, Inc.*, 600 F.2d 1003, 1012 n.6 (1st Cir. 1979).

The district court states that the appellants "should" have known that Servomation's bid was misleading. Yet this finding is not sufficient as a matter of law to conclude that appellants' argument that they made a good faith error was pretextual. Rather, the court must find that the appellants *were* aware that the Servomation bid was not actually the low bid, and that their decision to award the contract to Servomation was motivated by race discrimination against T & S. With respect to the appellants' later decision to go ahead with Servomation, the district court failed to make a explicit finding that their proffered explanation was pretextual, or even to discuss this reason at all. This issue should of course be considered on remand.

We agree with appellants that the district court should on remand consider separately the two distinct discriminatory acts alleged by T & S: the initial award of the contract to Servomation, and the decision to go ahead with Servomation after the Committee learned that it was not actually the low bidder. In particular, it is difficult to see how the Committee could be liable for discrimination in making the first decision. This decision was apparently made entirely on the basis of the assistant superintendent's recommendations; the Committee never even saw the T & S bid. Moreover, it is by no means clear from the record that the Committee knew that T & S was a minority firm when the initial decision to award the contract to Servomation was made.

On the other hand, the later decision to go ahead with Servomation was apparently made by the Committee, not by the assistant superintendent; and T & S had by then stated in its complaint against the Committee members in state court that it was "a minority owned small business". The district court on remand should thus consider separately the knowledge attributed to the

assistant superintendent and that attributed to the Committee; moreover, the court should realize that the *time* at which this knowledge was gained may affect its findings of liability.

## II. DAMAGES

 While vacating the judgment below and remanding the case for reconsideration of the merits, we add a word about damages in case the issue should arise again.[7] As the district court correctly noted, one who proves discrimination under 42 U.S.C. § 1981 is entitled to compensatory damages.[8] *See, e.g., Faraca v. Clements,* 506 F.2d 956, 959–60 (5th Cir. 1975); *Waters v. Wisconsin Steel Workers of Int'l Harvester Co.,* 502 F.2d 1309, 1321–22 (7th Cir. 1974). "In the case of injury of an economic nature the injured party is to be placed as near as possible in the situation he would have been in had the wrong not occurred". *Rivera Morales v. Benitez de Rexach,* 541 F.2d 882, 886 (1st Cir. 1976). Thus "damages for the relevant period are to be determined by measuring the difference between plaintiff's actual earnings for the period and those which he would have earned absent the discrimination of defendants". *Waters v. Wisconsin Steel Workers, supra,* 502 F.2d at 1321; *see Faraca v. Clements, supra,* 506 F.2d at 959. Plaintiff has the burden of proving that he lost earnings as a result of defendants' discrimination. *See, e.g., Harper v. General Grocers Co.,* 590 F.2d 713, 717 (8th Cir. 1979).

 While the trial judge generally has wide latitude in fixing the amount of damages, *Rivera Morales, supra,* 541 F.2d at 866, his decision must comply with legal standards and must be supported by the record. Here the district court simply accepted the anticipated net profit figure contained in the original T & S bid as the amount of compensatory damages. But this figure was based on the premises that the contract would extend for three years and that it would be on a profit and loss rather than a management fee basis. Given the different terms of the contract awarded to Servomation, the court must provide a clear explanation if it chooses to adopt the assumptions of the T & S bid. Moreover, T & S failed completely to demonstrate that it actually lost money as a result of the alleged discrimination; it may have engaged in other jobs during the relevant period which it could not have handled had it been awarded the Barrington contract. If so, its actual earnings should have been subtracted from what it would have earned absent the discrimination. While T & S thus technically failed to carry its burden of establishing an economic loss from the appellants discrimination, the district court may, if it reaches this issue on remand, take further evidence in order to determine the actual extent of T & S's damages.[9]

 Finally, given our disposition of this appeal, it is unnecessary to reach the issue of punitive damages. We note only that, should the district court address this question on remand, it is an issue of federal, not state, law.

*The judgment below is vacated, and the case is remanded for further proceedings consistent with this opinion.*

---

7. T & S argues that the district court should be ordered to consider its damage claim under 42 U.S.C. § 1983. *See* note 2, *supra.* Without deciding the issue, we note that the proper inquiry under § 1983 would likely focus on compensation, as under § 1981. *See generally Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).

8. If on remand the court should determine that T & S was discriminated against in the bidding process, but that it would not have been awarded the contract in any case because Servomation was, for any nondiscriminatory reason, chosen, compensatory damages would not be available. The court should then consider whether nominal damages, along with attorneys' fees, *see* 42 U.S.C. § 1988, might be appropriate relief, as in a Title VII suit. *See Joshi v. Florida State University,* 646 F.2d 981, 991 n.33 (5th Cir. 1981); *Gillin v. Federal Paper Board Co.,* 479 F.2d 97 (2d Cir. 1973).

9. As noted previously, this case was submitted to the district court on the basis of the transcript of the preliminary injunction hearing. Thus it is understandable that the record as it now stands is devoid of proof on the issues of damages.