**BASKIN–ROBBINS ICE CREAM COMPANY, Plaintiff,**

v.

**D & L ICE CREAM CO., INC., and Steven DeJesus, Defendants.**

**BASKIN–ROBBINS ICE CREAM COMPANY, Plaintiff,**

v.

**L & D ICE CREAM CO., INC., Defendant.**

**Nos. 83 CIV 3697, 83 CIV 3698.**

United States District Court, E.D. New York.

Dec. 7, 1983.

---

Brumbaugh, Graves, Donohue & Raymond, Tanner, Gilbert, Propp & Sterner, New York City, for plaintiff; Edward V. Filardi, Doreen J. Leavens, Samuel J. Gilbert, New York City, of counsel.

Silvera, Brooks & Latimer, New York City, for defendants; Trevor L. Brooks, New York City, of counsel.

OPINION AND ORDER

McLAUGHLIN, District Judge.

Plaintiff, Baskin-Robbins Ice Cream Company ("Baskin-Robbins"), sues the defendants D & L Ice Cream Co., Inc. ("D & L") and its president and sole shareholder, Steven DeJesus. In a related action, Baskin-Robbins also sues defendant L & D Ice Cream Company, Inc., ("L & D"). In both actions plaintiff asserts claims for trademark infringement and unfair competition under state and federal laws and violations of New York State statutes arising from the defendants' unauthorized use of Baskin-Robbins' trademarks in connection with the sale of ice cream and ice cream products.

On August 24, 1983, plaintiff obtained a temporary restraining order restraining defendants from using Baskin-Robbins' trademarks, signs, and other trademarked materials. The hearing on the preliminary injunction was then consolidated with the trial on the merits, which was conducted on September 6, 8 and 20, 1983. At the conclusion of trial, defendants stipulated not to use plaintiff's trademarks or trademarked materials, sell Baskin-Robbins ice cream, or represent to the public that they are authorized by plaintiff or are selling plaintiff's products until a final decision was rendered by this Court.

Plaintiff seeks (1) a permanent injunction restraining all defendants from using the Baskin-Robbins trademarks, from retaining Baskin-Robbins trademarked materials, and from otherwise infringing plaintiff's trademarks or competing unfairly with Baskin-Robbins; (2) an award of all monies due and owing by defendants for rent, ice cream, advertising and as set forth in a Stipulation previously entered into between the parties; (3) an award of costs and attorneys fees incurred by plaintiff in connection with these litigations; (4) an award of full costs and attorneys fees incurred by plaintiff in prosecuting the contempt by L & D of the temporary restraining order issued on August 24, 1983; and (5) an accounting of defendants' profits made as a result of their trademark infringement.

## FACTS

*Plaintiff's Trademarks and Franchising Program*

Plaintiff is the owner of the following United States Trademark Registrations for ice cream and ice cream products (the "Baskin-Robbins Trademarks"):

| Trademarks | Reg. No. | Issued | P. Ex. No. |
|---|---|---|---|
| BASKIN–ROBBINS | 1,185,045 | 1/05/82 | 1 |
| BASKIN–ROBBINS 31 ICE CREAM Plus Design | 712,570 | 3/14/61 | 2 |
| 31 Plus Design | 710,670 | 1/31/61 | 3 |
| 31 FLAVORS | 1,227,721 | 2/15/83 | 4 |
| 31 | 845,118 | 2/27/68 | 5 |
| 31 Plus Ice Cream Cone Logo | 1,014,217 | 6/24/75 | 6 |
| PRALINES 'N CREAM | 1,124,751 | 9/04/79 | 7 |
| CHILLY BURGER | 992,637 | 9/03/74 | 8 |
| CUT GALLONS | 1,067,346 | 6/07/77 | 9 |
| JAMOCA | 974,405 | 12/04/73 | 10 |
| Dot Design | 1,103,164 | 9/26/78 | 11 |

Plaintiff has established a franchising system of over 2,700 qualified franchises who purchase ice cream in bulk from Baskin-Robbins, Inc. for retail sale as licensed users of the Baskin-Robbins trademarks. Plaintiff requires that its franchisees (a) purchase ice cream in bulk only from an authorized Baskin-Robbins source; (b) sell only Baskin-Robbins ice cream under the Baskin-Robbins marks; and (c) keep specified business hours.

Plaintiff's franchisees must also pay rent and ice cream invoices when due. Baskin-Robbins, Inc. is the prime lessee on virtually all leases of Baskin-Robbins ice cream stores. Baskin-Robbins, Inc. pays the rent pursuant to such leases and seeks reimbursement from each franchisee/sublessee. In effect, the franchisee is accorded a grace period in connection with the payment of rent.

All Baskin-Robbins franchise agreements require that invoices for ice cream be paid within 7 days of delivery or at the next succeeding delivery, whichever is earlier (See P. Ex. 12, 13 ¶ 19). If a franchisee fails to honor that policy, then payment by certified check is required. When a franchisee on a certified check payment schedule fails to pay within the required 7 day

period after delivery, pre-payment is then required. Well over 90% of all Baskin-Robbins franchisees abide by plaintiff's requirement that rent reimbursement and ice cream invoices be paid when due.

In the event that plaintiff is forced to institute suit for breach of a franchise agreement, the franchisee is required to pay for all costs incurred by plaintiff, including attorneys fees (P. Ex. 12, 13 ¶ 15).

*Defendants' Franchise Agreements*

On February 14, 1978, Baskin-Robbins, Inc. entered into a standard Baskin-Robbins Franchise Agreement with DeJesus (P.Ex. L2), granting him a license to use the Baskin-Robbins Trademarks in connection with the operation of a retail ice cream store at 973 Flatbush Avenue, Brooklyn, New York.

On September 20, 1978, Baskin-Robbins, Inc. entered into a standard Baskin-Robbins Franchise Agreement granting L & D (P.Ex. 13) a license to use the Baskin-Robbins Trademarks in connection with the operation of a retail ice cream store at 876 Utica Avenue, Brooklyn, New York. While the terms of that Agreement provided for expiration on January 31, 1983, the Agreement continued pursuant to company policy, on a month-to-month basis.

Both L & D and D & L were high-volume Baskin-Robbins stores. The average annual delivery to a Baskin-Robbins franchise in the New York area is between 15,000–16,000 gallons of ice cream; but the defendants received well in excess of that gallonage. During 1982, the last full year the defendants were in operation, Baskin-Robbins, Inc. delivered approximately 24,000 gallons of ice cream to L & D and another 22,000 gallons to D & L.

*The Defendants' Breaches of the Franchise Agreements*

The Court finds that the defendants have breached their Franchise Agreements in the following respects:

1. During the course of their franchise, both L & D and D & L consistently failed to maintain the business hours at their retail ice cream stores required by paragraph 7 of their Franchise Agreements.

2. During the course of their franchise, both L & D and D & L consistently failed to pay rent and to satisfy invoices for ice cream when due as required by paragraph 10(1) of their Franchise Agreements. (P.Ex. 14, 15, 36–39).

3. Plaintiff continually cautioned the defendants that invoices were overdue via telephone calls and letters and mailgrams (P.Ex. 14, 15, 36–39). Since the defendant still failed to pay outstanding invoices, plaintiff properly invoked its right to require payment from both L & D and D & L by certified check. When defendants still failed to make such payments, plaintiff then required prepayment for ice cream.

4. To compel payment for rent and ice cream, plaintiff exercised its termination rights under the Franchise Agreements subject to cure of all breaches, and instituted several court actions against L & D and D & L (P.Ex. 16–21, 23–28). As a result of these suits, the parties entered into several Stipulations establishing a payment schedule for outstanding rent and ice cream invoices and permitting L & D and D & L to retain their franchises despite their breaches (P.Ex. 16, 20, 23, 27).

5. Both L & D and D & L violated paragraph 21(a) of their respective Franchise Agreements by purchasing bulk ice cream from another franchisee at times when they could not order from Baskin-Robbins, Inc. because of outstanding ice cream invoices. An issue was raised at trial as to whether the Franchise Agreements, particularly ¶ 21(a), prohibit the purchase of bulk ice cream by one franchisee on behalf of another. Wholesale purchase or exchange of bulk ice cream between franchisees is prohibited by ¶ 21(a) which provides that ice cream must be "supplied in bulk containers by AREA FRANCHISER or other sources then currently authorized in writing by Baskin-Robbins."

6. Most importantly, both L & D and D & L violated paragraph 5 of their respective Franchise Agreements by selling ice cream other than Baskin-Robbins ice cream in their franchise stores, particularly in cups bearing the Baskin-Robbins trademarks, as specifically set forth below:

(a) In April 1983, L & D admittedly purchased 300 tubs of Howard Johnson's ice cream for sale at its Baskin-Robbins store. (Tr. 217, 240–41, 244, 404–05);

(b) On August 10, 1983, L & D sold Howard Johnson's ice cream in its Baskin-Robbins store. (Tr. 36, 153, 176);

(c) In April 1983, L & D admittedly purchased LaSalle and Louis Sherry ice cream for sale at its Baskin-Robbins store. (Tr. 241–42);

(d) Specifically, on April 5, 1983, L & D sold LaSalle ice cream in its Baskin-Robbins store (Tr. 33, 159–60);

(e) In April 1983, D & L admittedly stored Howard Johnson's ice cream at its Baskin-Robbins store and intermingled such ice cream with Baskin-Robbins ice cream.

(f) On April 5, 1983, D & L sold LaSalle ice cream in its Baskin-Robbins store. (Tr. 48–49, 145, 158);

(g) On April 11, 1983, D & L sold LaSalle ice cream in its Baskin-Robbins store. (Tr. 160–61).

7. Only one other franchisee has sold ice cream other than Baskin-Robbins ice cream. The alternate product was removed by Baskin-Robbins, Inc. within 24 hours. That franchisee was permitted to retain its franchise, provided that such activity did not recur. There has never been a franchisee in the New York area, other than defendants, which has been repeatedly caught selling unauthorized products.

8. While the defendants acknowledge their frequent and recurring breaches of their respective Franchise Agreements, they claim that plaintiff improperly "linked" L & D and D & L together for purposes of extending credit and this linkage induced their breaches. The Court concludes that in conducting the businesses of L & D and D & L, Mr. Locklear and Mr. DeJesus essentially dealt for one account and, in essence, as a partnership, as evidenced by the following:

(a) Mr. DeJesus, an officer of both D & L and L & D, was authorized to sign checks on behalf of both L & D and D & L.

(b) Ronald Locklear, an officer of both D & L and L & D, was authorized to sign checks on behalf of both D & L and L & D.

(c) Joint payments were made by D & L and L & D to Baskin-Robbins, Inc. for ice cream.

(d) Mr. DeJesus certified checks in payment of monies owed by L & D to Baskin-Robbins, Inc.

(e) The initials "L & D" stand for Locklear and DeJesus and the initials "D & L" stand for DeJesus and Locklear.

(f) In or around October 1981, Mr. DeJesus lent Mr. Locklear $20,000 for a down payment in connection with the purchase of the L & D store premises.

(g) Both Messrs. Locklear and DeJesus are named as borrowers on the mortgage for the building where the L & D store is located.

(h) Messrs. Locklear and DeJesus pooled their resources to keep one store afloat, while allowing the invoices for the other store to pile up, in a scheme to obtain ice cream while avoiding the required full and timely payments for rent and ice cream to Baskin-Robbins.

(i) Messrs. DeJesus and Locklear made it a practice to purchase ice cream for both stores, in the name of whichever store happened to be paid-up. This enabled them, in effect, to pay half their bills and still obtain full ice cream deliveries for joint sale on credit.

*Termination of the Franchises*

On August 13, 1983, a Notice of Termination of the Franchise Agreement was sent to both D & L and L & D due to (a) L & D's sale of ice cream other than Baskin-Robbins ice cream; (b) the failure of both L & D and D & L to pay for ice cream when due; and (c) D & L's failure to pay rent when due. No opportunity for cure was required and none was given because of defendants' history of trademark infringement and other contractual breaches of the Franchise Agreement.

Although the Franchise Agreement was terminated on August 13, 1983, L & D continued to operate a retail store under the Baskin-Robbins Trademarks and to sell both Baskin-Robbins and other brands of ice cream and ice cream products in cups and containers bearing the Baskin-Robbins Trademarks. Both L & D and D & L continued to display Baskin-Robbins signs and retained custody of paper products and clocks bearing the Baskin-Robbins Trademarks.

## THE LAW

■ Section 32 of the Lanham Act (15 U.S.C. § 1114) imposes liability for trademark infringement on any person who uses a counterfeit, copy or colorable imitation of a registered trademark in connection with the advertising, distribution and/or sale of goods. The sale by a licensee of unauthorized products, i.e., products outside the scope of the license, is likely to confuse the public into believing that such products are in fact manufactured or authorized by the trademark owner. Thus, such conduct constitutes trademark infringement. *Franchised Stores of New York v. Winter*, 394 F.2d 664 (2d Cir.1968).

■ In this case, the sale by the defendants L & D, D & L and DeJesus of ice cream other than Baskin-Robbins ice cream was outside the scope of the trademark license/Franchise Agreement. The sale of such alternate ice cream in a retail store prominently displaying Baskin-Robbins signs and in cups bearing the Baskin-Robbins Trademarks was likely to result in confusion, mistake and deception of the purchasing public. As such, the defendants' activities during the course of their Franchise Agreements constituted an infringement of plaintiff's federally-registered trademarks.

■ As a result of such acts of trademark infringement and additional breaches of the Franchise Agreement, the L & D and D & L franchises were validly terminated for cause on August 13, 1983. The continued use by the defendants of a li-- censed trademark after the Franchise Agreement had been terminated constitutes an additional trademark infringement as well as a breach of contract. 15 U.S.C. § 1114(1); *Bowmar Instrument Corp. v. Continental Microsystems, Inc.*, 497 F.Supp. 947, 955 (S.D.N.Y.1980). It also constituted a common-law trademark infringement. *Id.*

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) proscribes false representations including misrepresentations as to the source or sponsorship of goods or services. *Sutton Cosmetics (PR), Inc. v. Lander Co.*, 455 F.2d 285 (2d Cir.1972). The defendants' use of the Baskin-Robbins Trademarks (1) in connection with unauthorized products and (2) after termination of the Franchise Agreement, falsely designated the source or sponsorship of their goods and services and constituted unfair competition under Section 43(a) of the Lanham Act. 15 U.S.C. § 1125(a).

■ Dilution of a trademark· is also actionable under the law of New York. *Allied Maintenance Corp. v. Allied Mechanical Trades, Inc.*, 42 N.Y.2d 538, 399 N.Y.S.2d 628, 369 N.E.2d 1162 (N.Y.1977); New York General Business Law § 368–d. The use by the defendants of the Baskin-Robbins trademarks (1) on unauthorized products and (2) after the termination of the Franchise Agreements on August 13, 1983 threatened to harm plaintiff's business reputation and to dilute the distinctive quality of its trademarks. As such, defendants have violated the New York Anti-Dilution Statute. New York General Business Law, § 368–d; *Bowmar Instrument Corp. v. Continental Microsystems, Inc.*, *supra*, at p. 958.

## REMEDIES

Under the circumstances of this case, I find that:

(1) plaintiff has no adequate remedy at law and is entitled to a permanent injunction;

(2) plaintiff is entitled to recover outstanding monies owed by the defendants for rent, ice cream, advertising and as set forth in prior Stipulations between the parties;

(3) plaintiff is entitled to recover its full costs and attorneys fees incurred in connection with these litigations; and,

(4) plaintiff is entitled to recover all profits made by the defendants as a result of their acts of trademark infringement.

Although there was some evidence that the defendants continued to traffic in Baskin-Robbins products and to violate plaintiff's trademarks in violation of the Court's temporary restraining order, the proof was less than satisfactory. Accordingly, the motion to punish the defendants for contempt is denied.

## DEFENDANTS' COUNTERCLAIMS

■ Defendants have filed counterclaims under 42 U.S.C. § 1981. That statute provides for "equal rights under the law" and prohibits racial discrimination by private employees. *See* 42 U.S.C. § 1981; *Ingram v. Madison Square Garden Center, Inc.,* 482 F.Supp. 414, 423 (S.D.N.Y.1979).

Defendants have alleged that plaintiff sought to terminate their franchises "primarily because" DeJesus and Locklear are black. To that end, defendants argue, plaintiff engaged in a systematic course of discriminatory business practices.

In order to prevail, the franchisees must establish a prima facie case of discrimination by a preponderance of the credible evidence. *See T & S Services Associates, Inc. v. Crenson,* 666 F.2d 722, 725 (1st Cir.1981). At that point, the franchiser is obligated "to articulate a legitimate nondiscriminatory reason" for termination of the franchises. *Id.* Despite its obligation of going forward with evidence of legitimacy, however, the franchiser does not assume the burden of persuasion on the ultimate issue of discrimination. *Id.* It remains for the franchisees to rebut the franchiser's proffered explanation as pretextual in nature. *Id.*

In this case, the evidence of discrimination adduced by defendants at trial failed to establish a prima facie case under § 1981. Not only were defendants unable to negotiate that initial hurdle, they were also unable to demonstrate that plaintiff's overwhelming number of "legitimate non-discriminatory reasons" for termination of the franchises, as discussed above, *supra,* were pretextual in nature. *See U.T.B., United Third Bridge, Inc. v. Local #3, International Brotherhood of Electrical Workers,* 512 F.Supp. 298, 300 (S.D.N.Y. 1981).

Accordingly, judgment will be entered for plaintiff on defendants' counterclaims under 42 U.S.C. § 1981.

SO ORDERED.