**GENERAL ELECTRIC COMPANY and Carboloy, Inc., Plaintiffs,**

**v.**

**Robert SPEICHER; and Speicher, Inc., Defendants.**

**Civ. No. F 87–98.**

United States District Court, N.D. Indiana, Fort Wayne Division.

March 14, 1988.

Reed Silliman, Fort Wayne, Ind., Donald Welsh and A. Sidney Katz, Chicago, Ill., Arthur E. Bahr, Hudson Falls, N.Y., for plaintiffs.

Albert Jeffers, George Pappas, Fort Wayne, Ind., for defendants.

## MEMORANDUM AND ORDER

ALLEN SHARP, Chief Judge.

Plaintiffs have moved this court, pursuant to Fed.R.Civ.P. 52(b), to reconsider its order of January 21, 1988. *See General*

*Electric v. Speicher,* 676 F.Supp. 1421, (N.D.Ind.1988). This court has scrutinized plaintiffs' memorandum in support of said motion. For reasons set forth below, plaintiffs' motion is hereby DENIED.

Plaintiffs challenge this court's ruling on the wrongful seizure claim, on plaintiffs' 15 U.S.C. § 1114(a) claim, on this court's decision not to award damages, and on the award of costs to defendants. These challenges will each be considered separately.

### I.

This court found that plaintiff, General Electric conducted a wrongful seizure on May 1, 1987. Plaintiffs advance several arguments to support their request for reconsideration of this decision.

■ Initially, plaintiffs contend that, contrary to this court's finding, the items seized were within the scope of the seizure order. The seizure order directed the Marshal to seize *"all cutting inserts marked with the number '570' and all ... boxes ... bearing any simulation, reproduction, counterfeit, copy or colorable imitation of any of General Electric's trademarks"* and "all simulations, reproductions, counterfeits, copies or colorable imitations of General Electric's trademarks, *including any and all cutting inserts bearing reproductions of any of General Electric's trademarks including the designation 570"* (emphasis added). Plaintiffs claim that the seizure of cutting inserts bearing numbers 866, 395, 879, 999, 516, 515, 883, 370, 350 and 905 was properly within the scope of the order because these all are common law trademarks of General Electric. It is unclear whether the items seized were *genuine* G.E. inserts (which would be beyond the scope of the order because it only permitted seizure of counterfeit items). Even if the items were reproductions of G.E. products, plaintiff should certainly be aware, due to its apparently thorough knowledge of 15 U.S.C. § 1116(d) which it has used on at least two prior occasions,[1]

---

1. *General Electric v. Sanett,* No. 84-3450 (C.D. Calif.1984); *General Electric v. Adams,* No. C   84-0661 (W.D.Ky.1984); *General Electric v.*

that this section only applies to *registered* trademarks. Copies of common law trademarks are *not* covered by this section. Although this court specifically permitted the seizure of all cutting inserts marked with the number "570," this was clearly an exception, which in retrospect, should not have been included. The statute is crystal clear:

> (B) As used in this subsection the term "counterfeit mark" means—
>
> (i) a counterfeit of a mark that *is registered on the principal register in the United States Patent and Trademark Office* for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered.

It also specifically states that its provisions apply only in civil actions arising under 15 U.S.C. § 1114(1)(a) or 36 U.S.C. § 380 (use of Olympic symbols, emblems, trademarks and names). Section 1114 applies only to registered trademarks. The actual wording of the order is undoubtedly ambiguous. But this does not alter the fact that ex parte seizures under § 1116(d) are an available remedy only in the case of *counterfeit, registered* trademarks. This court reiterates its admonition that plaintiffs who request *ex parte* seizures assume the risks of their wrongful acts. It is not enough that they acted in good faith; if defendants are harmed, plaintiffs must be held responsible. Plaintiffs state that "[i]t would be contrary to the spirit and purpose of 15 U.S.C. § 1116 to accuse plaintiffs of a wrongful seizure merely because no counterfeit goods per se were seized on May 1, 1988." This court absolutely disagrees with such reasoning. The spirit and purpose of 15 U.S.C. § 1116 is certainly *not* to give plaintiffs in civil trademark infringement suits unlimited power to commit acts which would otherwise be contrary to defendant's fundamental rights. The use of this remedy should be severely restricted to only the most egregious instances of counterfeiting.

Plaintiffs also claim their taking of photographs was not outside the scope of the order. The order was very specific in what it covered. It did not say anything about photographs. Plaintiffs argue, however, that courts have supported and even encouraged the taking of photographs in criminal searches under the "plain view" doctrine. *United States v. Espinoza,* 641 F.2d 153 (4th Cir.) *cert. denied* 454 U.S. 841, 102 S.Ct. 153, 70 L.Ed.2d 125 (1981); *United States v. Waxman,* 572 F.Supp. 1136, 1150 (E.D.Pa.1983) *aff'd w/o opinion* 745 F.2d 49 (3rd Cir.1984). This court is aware of such cases. However, those were criminal searches. This case can be distinguished in that it involves a civil action governed by a narrow statute. The plaintiff in § 1116(d) seizures has control over that which it wishes to search and seize. Plaintiffs could have easily requested that photographs be taken. This court must again stress the importance of limiting § 1116(d) seizures. If a plaintiff wishes to take pictures during its search, it should ask the court's permission. That is a small thing to require balanced against the need to protect defendants from potentially wrongful searches. Plaintiffs in § 1116(d) search and seizure requests should specify whether or not pictures or any other kind of image preservation methods are to be used. In this particular case, this court finds that the photographs were not wrongful. In the future, however, this court will require that a plaintiff specifically request permission to take pictures.

Plaintiffs also point out that this court mistakenly condemned plaintiffs' retention of the items seized because this court signed a Substitute Custodial order on April 30, 1987. This court admits its mistake. Plaintiffs were certainly acting with authority when their counsel retained the fruits of the search and seizure. Although this court regrets its decision to sign the Substitute Custodial Order and will certainly *not* make that mistake again, it cannot say that plaintiff acted wrongfully in retaining the evidence which it seized.

*Souris,* — F.Supp. —, No. 86–CV–71036–DT    (E.D.Mich.1987).

Defendants, however, in their "Memorandum in Opposition to Plaintiffs' Motion for Reconsideration and to Amend Judgment and Plaintiffs' Request for a Hearing," claim that the Substitute Custodial Order was not carried out properly. Defendants cite the affidavit of Morgan Cherry [2] dated February 4, 1988 to support its contention that the Substitute Custodial Order was violated. Cherry apparently kept negatives and copies of the photographs taken during the search. Cherry is president of M. Morgan Cherry & Associates of Alexandria, Virginia, a firm which specializes in investigations of patent and copyright infringement. Cherry was retained by plaintiffs' counsel to assist in the execution of the May 1, 1987, seizure. This court agrees with defendants that the retention of the negatives and copies of the photographs by Cherry was improper. It is extremely important that anything seized under the authority of § 1116(d) be properly held in custody, normally by the court, but in this case by the firm of Baker, Daniels & Shoaff.

In their "Reply Memorandum in Support of Their Motion for Reconsideration and to Amend Judgment," plaintiffs assert that Cherry's retention of the negatives and copies of photographs was proper because Cherry is an agent of Baker, Daniels & Shoaff. Whether or not there was a legitimate agency, do plaintiffs seriously contend that any of their agents are entitled to access to defendants' materials and documents, some of which may contain sensitive business information? This court cannot agree. It was improper, absent court approval, for any of the seized items to be held by anyone other than the authorized custodian. Further, as this court has learned, substitute custodial orders should be issued only in the most extenuating circumstances. Courts should retain custody of items seized if at all possible. The reason for the requirement that all materials seized be held in court custody is to protect defendants' property and any of defendants' legitimate business information.

tion which may be confidential. *See* Joint Statement on Trademark Counterfeiting Legislation, Senate Comm. on the Judiciary, S.R. 98–526, 98th Cong., 2d Sess. 34–626–627, *reprinted in* 1984 *U.S. Code Cong. & Admin. News* 3182/3627, (hereinafter "Joint Statement").

In a second circuit opinion written by Judge Winter just two months ago, the subject of wrongful searches was addressed. Judge Winter emphasized that a search must be confined to the terms and limitations of the authorizing warrant. *United States v. Matias*, 836 F.2d 744, 747 (2d Cir.1988). He also stated that items seized outside the scope of a valid warrant will ordinarily result in suppression not invalidation of the entire search. *Id.; Andresen v. Maryland*, 427 U.S. 463, 482 n. 11, 96 S.Ct. 2737, 2749 n. 11, 49 L.Ed.2d 627 (1976); *United States v. Dunloy*, 584 F.2d 6, 11 n. 4 (2d Cir.1978). Judge Winter, however was focusing on suppression of evidence seized. That is not the case here. Admissibility of evidence is not at issue. This court is being asked to interpret a statutory provision. Criminal search and seizure law is certainly relevant but this court must look to the plain meaning of the statute and its legislative history for primary guidance in interpreting such a provision where no case law is available. *See, e.g., In re McVey Trucking Co.*, 812 F.2d 311, 324–327 (7th Cir.1987).

The nature of the action governed by the statute must also be considered in interpreting the provision. This is not a general welfare statute that should be construed liberally. Singer, *Sutherland Statutory Construction* § 72.01 (4th ed. 1986) *citing, e.g., Damon v. Secretary of Health, Education & Welfare*, 557 F.2d 31 (2d Cir. 1977). Statutes which impinge on fundamental rights, however, are strictly construed. Singer, *Sutherland Statutory Construction* § 74.11 (4th ed. 1986). Because of the delicate fourth amendment values which are implicated under § 1116(d), it is this court's conclusion that

---

**2.** This affidavit was submitted as Exhibit E in support of plaintiffs' Motion for Reconsidera-

tion.

the aforesaid statute should be very narrowly construed.

■ Section 1116(d)(11) reads as follows:

A person who suffers damage by reason of a wrongful seizure under this subsection has a cause of action against the applicant for the order under which such seizure was made, and shall be entitled to recover such relief as may be appropriate, including damages for lost profits, cost of materials, loss of good will, and punitive damages in instances where the seizure was sought in bad faith, and, unless the court finds extenuating circumstances, to recover a reasonable attorney's fee. The court in its discretion may aware prejudgment interest on relief recovered under this paragraph, at an annual interest rate established under section 6621 of Title 26, commencing on the date of service of the claimant's pleading setting forth the claim under this paragraph and ending on the date such recovery is granted, or for such shorter time as the court deems appropriate.

"Wrongful seizure" is not defined. The legislative history of the statute reveals that such an omission was deliberate. *General Electric v. Speicher*, 676 F.Supp. 1421, 1435 (N.D.Ind.1988) *citing* H.R. No. 98–997, 98th Cong., 2d Session 25. The House Committee Report stated that it was the court's duty to determine whether the circumstances of a particular case constitute a "wrongful seizure." It went on to say that the Committee intends the term to encompass the following three situations:

First, a seizure will be considered wrongful if the applicant acts in bad faith in seeking it. For example, it would constitute bad faith for an applicant to seek a seizure order in an effort to maintain retail prices at a certain level, and to prevent the discounting of those prices.

Second, a seizure must be considered "wrongful" when the matter seized is not counterfeit. In such a case, it does not matter that the plaintiff believed in good faith that the matter was counterfeit. As between two relatively innocent parties, the defendant is the more innocent. The plaintiff initiated the seizure action and must suffer the consequences.

Third, a seizure must be considered "wrongful" to the extent that it is executed improperly. Even if the goods are counterfeit, and even if the defendant has acted in bad faith in copying the plaintiff's trademark, if, for instance, the law enforcement officer executing the search unnecessarily destroys the defendant's property, or the plaintiff violates a court order prohibiting access to confidential business records, the seizure is "wrongful" to this extent and the defendant is entitled to recover damages and other relief.

House Committee on the Judiciary, H.R. No. 98–997, 98th Cong., 2d Session 25–26.

The Joint Statement on the compromise bill which was intended to be "the final and authoritative explanation of the legislative intent of this act" reads as follows:

The term "wrongful seizure" was intentionally left undefined in both the Senate and House bills, in the belief that the courts will best be able to interpret this phrase under the circumstances of each individual case, and in light of precedents under rule 65 of the Federal Rules of Civil procedure. However, a few rules of thumb can be outlined. The first is that the mere fact that a few legitimate items may have been seized does not make the seizure as a whole wrongful; otherwise, a counterfeiter could ensure that any seizure of its counterfeit merchandise would be "wrongful" simply by mingling a few genuine items with his or her inventory of fakes. The second is that a seizure will be wrongful if the applicant acted in bad faith in seeking it. For example, it would obviously constitute bad faith for an applicant to seek a seizure order in an effort to prevent the sale of legitimate merchandise at discount prices. Similarly, it would constitute bad faith for an applicant deliberately to defy a court order limiting its access to confidential documents seized from the defendant.

Third, a seizure must be considered "wrongful" if the matter seized is legitimate, noninfringing merchandise. In such a case, even if the plaintiff acted in good faith, the defendant should be compensated for his or her losses caused by the plaintiff's use of an ex parte process. Beyond these principles, the act leaves the definition of "wrongful seizure" to case-by-case interpretation in light of rule 65 and other precedents.

Joint Statement, *supra* at 34–628, 629. In this court's opinion, a wrongful seizure was committed by plaintiffs, considering all the circumstances together with the aforesaid legislative history.

After balancing the need for such seizures against the manifest constitutional problems, Congress drew up very specific, narrow legislation to permit such seizures.[3] The Joint Statement issued by Congress to explain the final compromise bill emphasized that ex parte seizures should be ordered "only as a last resort." It went on to state:

It would not be appropriate to order such a seizure against a reputable merchant, absent unusual circumstances— such as when the applicant can make a particularized showing that the merchant would be likely to defy a court order to maintain the status quo. A reputable businessperson would not be likely to conceal or destroy evidence when notified of a pending lawsuit, and the issuance of an ex parte seizure order against such a person would therefore be wholly inappropriate, absent the unusual circumstances just mentioned. Rather, the sponsors believe that ex parte seizures are a necessary tool to thwart the bad faith efforts of fly by night defendants to evade the jurisdiction of the court.

Joint Statement, *supra* at 34–625. In retrospect, this court can see that it erred in its generosity to the plaintiff in granting the seizure order. Such generosity, however, does not justify the excesses in which the representatives of this plaintiff engaged at the time of the search of the defendant's premises. Apart from said excesses, Speicher, Inc. obviously was not the type of concern Congress had in mind when it drafted this law. But this court will not shoulder all the blame. Plaintiff G.E. certainly knew what it was doing when it went after a businessman it had successfully dealt with for many years with such a vengeance. Now it must suffer the consequences for its wrongful search and seizure. Although this court now finds that the taking of pictures was not wrongful, such finding is harmless error under Rule 61 of the Federal Rules of Civil Procedure. This court stands by its original ruling that plaintiff G.E. committed a "wrongful seizure" as that term is interpreted under § 1116(d)(11) and under the facts of this case. Plaintiff did not seize counterfeits of registered trademarks. It seized genuine articles and *possibly* copies of unregistered trademarks (although the inserts which were numbered may also have been genuine *or* the numbers may not have been common law trademarks; either way, they would not be protected by this section). Furthermore, the Substitute Custodial Order was violated because someone other than Baker, Daniels & Shoaff retained negatives and copies of photographs taken during the seizure.

To summarize, the record in this case provides a number of object lessons to the court, to counsel and to the parties in regard to the care and restraint with which all must approach this delicate and sensitive kind of search. One of the lessons for this court is to be more candidly careful in

---

**3.** The constitutionality of this statute is not here challenged and has not been the subject of specific judicial decision. In *General Motors Corp. v. Gibson Chemical & Oil,* 786 F.2d 105, 109 (2d Cir.1986), appellants charged that "serious constitutional infirmities exist in the Trademark Counterfeiting Act's Seizure provisions." The court in *General Motors* declined to entertain the argument because such contentions were not argued in the district court. Recently, in *Reebok Int'l Ltd. v. Su Youn Pak,* —— F.Supp. ——, 1987 U.S.Dist.Lexis 11591 (S.D.N.Y. Dec. 21, 1987), in an unpublished opinion, Judge Griesa rejected defendant's contention that the ex parte seizure *order* was unconstitutional. The question of whether the statute itself was constitutional was not addressed.

signing ex parte orders submitted by counsel during the early stages of these proceedings without a critical review thereof.[4] This critical review is especially imposed upon the district court when, as here, such proposed ex parte orders may fly in the face of a specific provision in the statute itself. This court makes no apologies to anyone for its deepest commitment to a strict and restrained construction of the aforesaid statute because of the fundamentally important values that are implicated. The values are ones that inhere in the privacy expectation of the fourth amendment itself.

The Substitute Custodial Order permitting these plaintiffs to retain the fruits of the aforesaid search was an act of extreme generosity by this court which will *not* be repeated. Notwithstanding the same, the conduct of the plaintiffs and their representatives was excessive on the basis of the full and mature record that the court now has that it did not have at the stages of earlier proceedings. Those excesses alone justify the relief granted to the defendants in this case and such will not be disturbed.

## II.

■ This court, in its original Memorandum and Order, in denying plaintiffs' 15 U.S.C. § 1114(a) claim, stated that "G.E. cites no authority, nor is this court aware of any authority, which would put a defendant's use of a *genuine* mark within the ambit of this particular statute." (emphasis in original) *General Electric*, at pp. 1428. In its Motion for Reconsideration and to Amend the Judgment, plaintiffs have generously supplied such authority. Plaintiffs cite *Burger King Corp. v. Mason*, 710 F.2d 1480, 1492 (11th Cir.1983), *reh. denied* 748 F.2d 1115 (11th Cir.1983), *cert. denied* 465 U.S. 1102, 104 S.Ct. 1599,

80 L.Ed.2d 130 (1984) ("Thus, a trademark infringement case need not just involve imitation of the registrant's mark. The unauthorized use of a trademark which has the effect of misleading the public to believe that the user is sponsored or approved by the registrant can constitute infringement.") *Franchised Stores of New York, Inc. v. Winter*, 394 F.2d 664, 668 (2d Cir. 1968) ("It would be totally illogical to provide protection to a trademark owner where someone uses a 'colorable imitation' of the mark but to deny protection where the owner's own mark is employed to palm off on the public the merchandise of someone else."); *Baskin–Robbins Ice Cream Co. v. D & L Ice Cream Co., Inc.*, 576 F.Supp. 1055 (E.D.N.Y.1983); *Allegheny Car Wash Corp. v. Amoco Oil Co.*, 201 U.S.P.Q. 798 (W.D.Pa.1977).

At least two district courts have distinguished *Burger King* and similar cases (such as *Professional Golfers Ass'n of American v. Bankers Life and Casualty Co.*, 514 F.2d 665 (5th Cir.1975). Those courts distinguished *Burger King* as applying only to situations where a former licensee continues to use the former licensor's trademark without authority. *Home Box Office, Inc. v. Corinth Motel, Inc.*, 647 F.Supp. 1186–1191–92 (N.D.Miss.1986); *El Greco Leather Products Co. v. Shoe World, Inc.*, 599 F.Supp. 1380, 1391 (E.D. N.Y.1984). It is not clear where this case fits. It is not a case of a former licensee continuing to use a former licensor's mark. Certainly the use of genuine marks without authority easily fits within § 1125(a) infringement. *See General Electric*, at 1428–29. This is a much broader provision which covers unregistered as well as registered marks and, as this court found, covers genuine as well as counterfeit marks. This court found infringement un-

---

**4.** This court is in very distinguished company in its generosity in signing preliminary ex parte search and seizure orders without sufficient critical consideration thereof. In a case decided the very same day as *General Electric v. Speicher*, Judge Sofaer was reprimanded for signing the same type of order. *Warner Bros. Inc. v. Dae Rim Trading, Inc.*, 677 F.Supp. 740, 1988 U.S.Dist.Lexis 492 (S.D.N.Y.1988). In that case, the facts were much more egregious than here

but, all the same, it is this court's considered opinion that judges sometimes sign such orders a bit too routinely. It is sincerely hoped that district court judges will henceforth take heed of the lessons learned by the *Speicher* and *Dae Rim* courts and be *very* careful in considering plaintiffs' requests for § 1116(d) seizures. These two cases are excellent examples of the dangers of such seizures.

der that section, yet plaintiff still asks for relief under § 1114(a), because plaintiff would be in a better position to collect treble damages if a violation of § 1114(a) were found. Section 1117(b) states:

In assessing damages under subsection (a) of this section, the court *shall,* unless the court finds extenuating circumstances, *enter judgment for three times such profits or damages, whichever is greater, together with a reasonable attorney's fee, in the case of any violation of section 1114(1)(A) of this title* or section 380 of Title 36 that consists of intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark (as defined in section 1116(d) of this title), in connection with the sale, offering for sale, or distribution of goods or services. In such cases, the court may in its discretion award prejudgment interest on such amount at an annual interest rate established under section 6621 of Title 26, commencing on the date of the service of the claimant's pleadings setting forth the claim for such entry and ending on the date such entry is made, or for such shorter time as the court deems appropriate. (emphasis added)

Plaintiff claims that if a violation of § 1114(a) is found, the court *must* award treble damages. This court points, out, however, that in extenuating circumstances, it would have the discretion to deny such award. Even if there is a violation of § 1114(a) under the *Burger King* analysis, this court refuses to award treble damages. The facts of the case are very unusual. Treble damages are punitive in nature and punitive damages should only be awarded in cases of intentional misconduct. That is not the case here. To reiterate the finding in the original Memorandum and Order, defendants' conduct was simply not egregious enough to warrant an award of punitive damages.

### III.

This court found that the equities of this case call for an injunction against defendants' use of plaintiffs' trademarks, both registered and unregistered. The equities

preclude the award of monetary damages. Plaintiffs have attempted to relitigate their position with regard to the damages issues in their Motion for Reconsideration. This court stands steadfastly by its original decision. Damages are simply unwarranted based on the facts of this case.

### IV.

■ This court awarded costs to the defendants. Plaintiffs argue that, as the prevailing party, they should be awarded costs. This court fails to see how plaintiffs can claim to be the prevailing party as they were the losers on several counts. Under Fed.R.Civ.P. 54(d), "costs shall be allowed as of course to the prevailing party *unless the court otherwise directs."* (emphasis added) In other words, this court has discretion to award costs. The decision to award costs to defendants stands.

### V.

In conclusion, this court has reconsidered its decision and, based on the analysis set forth above, it finds that, although some harmless error was committed by this court under Fed.R.Civ.P. 61, the decision was basically sound. Plaintiffs' Motion for Reconsideration and to Amend the Judgment is thereby DENIED. IT IS SO ORDERED.